**Chet Howard LEARNED, in his individual capacity, and as member of the 23rd Business Committee, Plaintiff,**

v.

**The CHEYENNE–ARAPAHO TRIBE, Maurice Babby, as Area Director of the Bureau of Indian Affairs, Juanita Learned, as Chairman of the 23rd Business Committee of the Cheyenne-Arapaho Tribe, the 24th Business Committee of the Cheyenne-Arapaho Tribe, Steve Birdshead, Wisdom Nibbs, Clinton Youngbear, Sr., Floyd Blackbear, Imogene Mosqueda as Chairman of the Election Board of the Cheyenne-Arapaho Tribes of Oklahoma, Defendants.**

**No. CIV 84–61–R.**

United States District Court,
W.D. Oklahoma.

Feb. 16, 1984.

John R. Hynson, Oklahoma City, Okl., for plaintiff.

William S. Price, U.S. Atty., John E. Green, First Asst. U.S. Atty., Oklahoma City, Okl., Tom R. Stephenson, Watonga, Okl., Jim Merz, Oklahoma City, Okl., Cliff Shilling, Norman, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

The Plaintiff, Chet Howard Learned, brought this action against the Defendants for declaratory and injunctive relief. Several of the Defendants, including the United States, on behalf of the Director of the Bureau of Indian Affairs (BIA), filed Motions to Dismiss for lack of subject matter jurisdiction. That issue was briefed by the interested parties, and a hearing on the matter was held. The Court ordered supplemental briefs on the jurisdictional issue, which were filed by the appropriate parties.

This action arose from a recent election held by the Cheyenne-Arapaho Tribe. The Plaintiff, a member of the Twenty-Third Business Committee of the Tribe, was unsuccessful in his bid for election to the Twenty-Fourth Business Committee. He sought relief from the tribal Election Board, alleging irregularities in the election process. When the accused members of the Board refused to recuse themselves, and the Board voted to include those members in the session considering the alleged violations, the Plaintiff terminated the proceeding without a decision on the merits. He then brought an action in the Court of Indian Offenses, a tribal court created under the Code of Federal Regulations to handle civil and criminal disputes. That Court found that although irregularities did occur, the relief sought by the Plaintiff was inappropriate. Spurning a possible appeal to the Court of Indian Appeals, the Plaintiff filed this action in this Court seeking relief from the alleged election violations.

■ In his Complaint, the Plaintiff alleges two bases of jurisdiction over the subject matter of this action. First, he alleges that because the Twenty-Third Business Committee adopted a resolution permitting this Court to hear the dispute, this Court has jurisdiction. The Plaintiff feels that the "trust relationship" between the quasi-sovereign Cheyenne-Arapaho Tribe and the United States gives rise to such a procedure, since the Tribe is a "ward" of the

United States and should thus be afforded protection in federal courts. The Court finds this allegation of jurisdiction is patently without merit. The jurisdiction of this Court, or any federal court, is that which is conferred *only* by statutory enactment by the Congress of the United States. To hold otherwise would open the federal courts of the United States to actions arising under the laws of other nations, merely because a sovereign or quasi-sovereign had decided that a United States federal Court is the appropriate forum. Thus, the Court concludes that the action of the tribal Business Committee does not confer subject matter jurisdiction on this Court.

■ The Plaintiff also alleges jurisdiction under various federal statutes, most notably 25 U.S.C. § 1302(8) (1982) and 28 U.S.C. § 1343(a)(4). He alleges that the cause of action arises under § 1302, and that jurisdiction over that cause is established by § 1343(a)(4) or 28 U.S.C. § 1331 (1982), the general federal question jurisdiction statute. The Court will only consider the allegation of jurisdiction under § 1343(a)(4), since that section is universally deemed the proper jurisdictional basis for § 1302 claims. *See Ramey Construction v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 319 n. 3 (10th Cir. 1982).

Section 1302, commonly referred to as the Indian Civil Rights Act (ICRA), gives causes of action to individuals wronged by the actions of Indian tribes and tribal officials. The Plaintiff argues that the election irregularities denied him the due process guarantee of § 1302(8), the analog to the federal due process clause of the Constitution. Thus claims the Plaintiff, this Court has jurisdiction over such a cause of action by virtue of § 1343(a)(4), which confers federal jurisdiction over cases arising under civil rights statutes.

The Court is cognizant of a substantial body of confusing case law regarding federal jurisdiction of tribal election disputes. Some measure of clarity was attained, however, by the recent Supreme Court decision in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). In *Martinez*, the Court considered the purposes of § 1302 in light of an express Congressional intention to reserve sovereign autonomy to the independent Indian tribes. The Court noted that "it is highly unlikely that Congress would have intended a private cause of action for injunctive and declaratory relief to be available in the federal courts to secure enforcement of § 1302." 436 U.S. at 69, 98 S.Ct. at 1682. The Court further stated that the "description of purpose of Title I, as well as the floor debates on the bill, indicates that the ICRA was generally understood to authorize federal judicial review of tribal action *only* through the habeas corpus provisions of § 1303." *Id.* at 69–70, 98 S.Ct. at 1682–1683 [emphasis added, citations omitted]. This being so, the Court determined:

> These factors, together with Congress' rejection of proposals that clearly would have authorized causes of action other than habeas corpus, persuade us that Congress, aware of the intrusive effect of federal judicial review upon tribal self-government, intended to create only a limited mechanism, for such review, namely, that provided for expressly in § 1303.

*Id.* at 70, 98 S.Ct. at 1683. Based on such findings, the Court concluded:

> Congress retains authority expressly to authorize civil actions for injunctive or other relief to redress violations of § 1302, in the event that the tribes themselves prove deficient in applying and enforcing its substantive provisions. But unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 does not implicitly authorize actions for declaratory or injunctive relief against either the tribe or its officers.

*Id.* at 72, 98 S.Ct. at 1684.

Despite the apparently clear language in *Martinez*, the Tenth Circuit Court of Appeals has concluded that the case can be distinguished and is thus not a bar to federal jurisdiction over § 1302 claims in all cases. In *Dry Creek Lodge, Inc. v. Arapa-*

*hoe & Shoshone Tribes,* 623 F.2d 682 (10th Cir.1980), *cert. denied* 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847, *reh. denied* 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981), that Court determined that *Martinez* applied only where tribal remedies were available. *Id.* at 685. The Court noted that the Supreme Court relied on the availability of tribal courts and the "intratribal nature of the problem sought to be resolved." *Id.* The Court thus concluded that a federal forum was available for § 1302 claims where no tribal remedy was available to the plaintiff.[1] *Id.*

■ However, this Court is not troubled by the Tenth Circuit's amplification of the *Martinez* ruling. Unlike *Dry Creek Lodge,* this case involves available tribal remedies, judicial and otherwise, which were at least partially sampled by the Plaintiff. Further, the dispute encountered here is of the "intratribal nature" contemplated by *Martinez;* it is particularly significant that even before the restrictive holding in *Martinez* the Tenth Circuit refused claimants under § 1302 access to federal courts for redress of alleged election violations. *See, e.g., Groundhog v. Keeler,* 442 F.2d 674, 682 (10th Cir.1971) ("By its stated intentional exclusion from the Act .... any basis of federal court jurisdiction over tribal elections was definitely eliminated."). Thus, this Court concludes, as did the *Martinez* Court, that federal jurisdiction is lacking over the § 1302 claims alleged herein.

■ Further, although *Martinez* purports to control only § 1302 actions against the tribes or tribal officials, the Court concludes as well that it has no jurisdiction over the alleged claim against the Bureau of Indian Affairs. The authorities examined by the *Martinez* Court indicated that the purpose of § 1302 was to remedy civil rights violations committed by the quasi-sovereign tribe. 436 U.S. at 61, 98 S.Ct. at 1678. It is nowhere stated that § 1302 confers a cause of action against the United States or any of its agencies. Thus, the Court is without jurisdiction of the claim as it related to the BIA on those grounds, and as the Plaintiff has alleged no other jurisdictional basis, the BIA will be dismissed as well.

At the hearing on jurisdiction the Court also heard argument on the Plaintiff's Motion for a Preliminary Injunction. The Plaintiff sought to enjoin destruction of the election materials pending the outcome of the action. The temporary restraining order was dissolved, and the motion for a preliminary injunction denied, after the Court took possession of the materials in question. Because the Court is dismissing this action for lack of subject matter jurisdiction, those election materials, consisting of one box of ballots and envelopes, shall be returned to Imogene Mosqueda, tribal Election Board Chairman, from whom they were received.

In summary, the Defendants' Motion to Dismiss for lack of subject matter jurisdiction is granted. The Clerk of the Court is ordered to return the election materials received at the hearing to Imogene Mosqueda, Defendant and tribal Election Board Chairman.

---

1. It is worthy of mention that the opinion in *Dry Creek Lodge* was met by unequivocal dissent. The dissenting judge concluded, as had the trial court, that *Martinez* compelled dismissal of the case. 623 F.2d at 685 (Holloway, J. dissenting).