R. Perry WHEELER, Agnes Cowan, Wendall Cochran, George Wickliffe, James Duffield, Gilbert Green, Marion Hagerstrand, and Gloria Wilson, Plaintiffs–Appellants,

v.

Ross O. SWIMMER, Dora Watie, Gary Chapman, Dennis Springwater, Joe M. Parker, Frank Ferrell, Gene Thompson, Nathan Young, Dorothy Worsham, Maude Davis, Elizabeth Sullivan, Marie Wadley, Ray McSpadden, Defendants–Appellees,

and

Wilma Mankiller, Amon Baker, Sam Ed Bush, Don Crittenden, Leo Fishinghawk, Stann Hummingbird, Jr., John A. Ketcher, Bob McSpadden, Patsy Morton, Goodlow Proctor, Ron Qualls, Barbara Starr Scott, Clarence Sunday, Dave Whitekiller, and Wathene Young, Defendants–Appellees.

No. 85–2164.

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1987.

D. Gregory Bledsoe, Tulsa, Okl., and L.V. Watkins, Muskogee, Okl., for plaintiffs–appellants.

James G. Wilcoxen, Muskogee, Okl., for defendants-appellees except those referred to as "federal defendants".

F. Henry Habicht II, Asst. Atty. Gen., Layn R. Phillips, U.S. Atty., N.D. Oklahoma, Peter Bernhardt, Asst. U.S. Atty., Robert L. Klarquist and William B. Lazarus, Dept. of Justice, Washington, D.C., and David Etheridge, Dept. of the Interior, Washington, D.C., of counsel, for defendants-appellees.

Before MOORE, TACHA and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

This appeal is from an order of the district court granting a motion to dismiss in favor of the individual appellees. The appellees are the successful incumbents in a tribal election of the Cherokee Nation of Oklahoma and three employees of the federal Bureau of Indian Affairs (BIA). The district court determined that the case involved purely intratribal political controversies and declined to assume jurisdiction. We agree with this determination and affirm.[*]

Appellant R. Perry Wheeler was a candidate for principal chief of the Cherokee Nation in the June 18, 1982, tribal elections. The other appellants were candidates for other offices. Appellee incumbents won the election. Appellants unsuccessfully challenged the conduct of the election and its subsequent certification through the appropriate tribal and BIA appeals procedures. Those proceedings all dealt generally with the actions of the tribal organizations and of governmental agencies. In this case appellants' claims are based on the effects of various alleged actions of the individual appellees relating to the conduct of the tribal elections. Appellants claim that appellees' actions deprived them of their civil rights in violation of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–02, the Constitution of the United States, and the treaty, constitution, and ordinances of the Cherokee Nation. Appellants further allege that appellees conspired to prevent appellants, as a class, from exercising their rights and privileges of citizenship in violation of 42 U.S.C. § 1985(3). Appellants seek declaratory and injunctive relief and monetary damages.

In a companion case to this, appellants sought a determination that the BIA had

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

authority to interfere in a tribal election even where the tribe provided administrative and judicial procedures for contesting elections. *Wheeler v. United States Dept. of Interior,* 811 F.2d 549 (10th Cir.1987). We held in that case that the Department of Interior, and thus the BIA, had no authority to take action contrary to the tribal resolution of the disputes, and therefore the courts have no authority to order the Department to grant the relief sought. This court also held that the Cherokee Nation possesses an inherent right to self-government that is not diminished by its failure to reorganize under the Oklahoma Indian Welfare Act, 25 U.S.C. § 503. We reaffirmed that the Cherokee Nation is a distinct organization capable of governing itself and that it is entitled to pursue this right without federal government intrusion.

Appellants in this case argue that the Cherokee Nation has, to some extent, surrendered some aspects of its sovereignty to the federal government. Therefore, they contend, the Cherokee Nation stands in a different posture from other tribes with respect to the policy against federal government intrusion into matters of tribal self-government and tribal administration of civil rights disputes. To support this argument appellants cite treaty, statutory, and constitutional provisions that purportedly imply extensive federal involvement in tribal internal affairs. None of the provisions relied upon, however, suggest that the Cherokee Nation intended to surrender any of the inherent right to self-government reserved to all Indian tribes; nor do they suggest that the federal government intended to withdraw or in any way abrogate that right. Further, our holding in the companion case precludes any claim that the Cherokee Nation is to be treated as enjoying any fewer rights to internal self-government than other tribes. We therefore analyze appellants' allegations in this case according to established precedent generally applicable to Indian tribes.

■ Our holding that the Cherokee Nation possesses an inherent right to self-government without federal government in-

trusion disposes of appellants' claims under the Indian Civil Rights Act. The district court correctly held that the Indian Civil Rights Act confers no subject matter jurisdiction in this case for declaratory, injunctive, and monetary damage remedies. The only federal relief available under the Indian Civil Rights Act against a tribe or its officers is a writ of habeas corpus. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 63, 98 S.Ct. 1670, 1679, 56 L.Ed.2d 106 (1978). Actions for any other relief must be brought through tribal forums. The federal courts must decline jurisdiction where such forums are available. *Goodface v. Grassrope,* 708 F.2d 335, 338 n. 4 (8th Cir.1983). We reemphasized this principle in *Wheeler* saying: "Congress, in the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1341 (1982), elected to impose less supervision on tribal administration of civil rights disputes than it imposes on federal and state governments. The Act's legislative history indicates that this reflects a deliberate choice by Congress to limit intrusion into traditional tribal rights." 811 F.2d at 551. The district court in this case properly declined jurisdiction on this ground.

■ The federal Civil Rights Acts similarly provide no basis for federal court jurisdiction. Jurisdiction arises under 28 U.S.C. § 1343(a)(4) when any person states a claim "under any Act of Congress providing for the protection of civil rights." Appellants contend that in alleging violations of 42 U.S.C. §§ 1985(3) and 1986, they have stated such a claim. Appellants allege nonspecific violations of their first, fifth, ninth, thirteenth and fifteenth amendment rights. All of the claimed violations relate to the tribal election process. Even assuming that the complaint is sufficiently specific to meet the requirements of Fed.R.Civ.P. 8(a), appellants have failed to plead facts sufficient to state a claim under sections 1985(3) and 1986.

In order to satisfy the requirements of those sections appellants must allege violations of statutory or constitutional rights that the federal courts have jurisdiction to redress. Sections 1985(3) and 1986 create no independent substantive causes of ac-

tion. *Great Am.Fed.S. & L. Assn. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Thus, appellants must point to independent substantive rights enforceable in the federal courts to state a claim under sections 1985(3) and 1986.

The Supreme Court in *Martinez* recognized explicitly that the Indian Civil Rights Act was passed to " 'protect individual Indians from arbitrary and unjust actions of tribal governments.' " 436 U.S. at 61, 98 S.Ct. at 1678 (quoting S.Rep. No. 841, 90th Cong., 1st Sess., 5–6 (1967)). The Court went on to note that the competing purpose of promoting Indian self-government led Congress to selectively incorporate and modify the safeguards contained in the Bill of Rights "to fit the unique political, cultural, and economic needs of tribal governments." *Id.* at 62–63, 98 S.Ct. at 1679. Thus, the safeguards of the federal Constitution were not extended wholesale to individual members of Indian tribes. *See Id.* at 62 n. 12, 98 S.Ct. at 1679 n. 12. Appellants must, therefore, rely on the provisions of the Indian Civil Rights Act, the only statute even arguably applicable here, to state a cause of action under sections 1985(3) and 1986.

Federal courts must "be more than usually hesitant to infer from [Congress's] silence a course of action that while serving one legislative purpose, will disserve the other". *Id.* at 64, 98 S.Ct. at 1680. Having held that the district court correctly applied that principle to decline jurisdiction under the Indian Civil Rights Act, we now hold that sections 1985(3) and 1986 provide no independent remedy for these appellants.

The allegations in this case all relate to the conduct of a tribal election. The right to conduct an election without federal interference is essential to the exercise of the right to self-government. Although appellants have couched this appeal in terms of alleged violations of their rights by individuals instead of by the tribal organization, the interest in preserving the inherent right of self-government in Indian tribes is equally strong. The Supreme Court said in *Martinez:* "Tribal forums are available to

vindicate rights created by the ICRA.... Tribal courts have repeatedly been recognized as appropriate forums for the *exclusive* adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." 436 U.S. at 65, 98 S.Ct. at 1680 (emphasis added).

Appellants must seek their remedy through the available tribal forum. The identity of the defendants does not change the resolution of the jurisdictional issue. As we said in *Wheeler*, "the Cherokee Nation has a system for interpreting tribal law, and, when a tribal forum is available ... the aggrieved party must seek relief in that forum." 811 F.2d at 553.

The order of the district court is AFFIRMED and the appeal is dismissed.