931 F.2d 636
 Alinda TILLETT, Plaintiff-Appellant,
v.
Manuel LUJAN, Jr., as the United States Secretary of the
Interior; Clem E. Cearley, Superintendent U.S. Bureau of
Indian Affairs, Anadarko Agency; Walter Mills, Anadarko
Area Director, U.S. Bureau of Indian Affairs; Phil Dupoint,
also known as Joe Fish, alleged Vice Chairman of the Kiowa
Tribe; Philip Lujan, Chief Magistrate of the Code of
Federal Regulations BIA Court of Indian Offenses, for the
Anadarko, Oklahoma Area, Defendants-Appellees.
 No. 90-6088.
 United States Court of Appeals,
Tenth Circuit.
 April 23, 1991.
 
 Alinda Tillett, pro se.
 Richard B. Stewart, Asst. Atty. Gen., Timothy D. Leonard, U.S. Atty., M. Kent Anderson, Asst. U.S. Atty., Oklahoma City, Okl., Edward J. Shawaker and Dirk D. Snel, Attorneys, Dept. of Justice, Washington, D.C. (Alan Woodcock, Office of the Regional Solicitor, U.S. Dept. of the Interior, Tulsa, Okl., of counsel) for defendants-appellees.
 Before LOGAN, MOORE, and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Alinda Tillett appeals the district court's grant of summary judgment to defendant federal officials and Kiowa Tribe members and dismissal of her action "to allow adjudication in the appropriate forum, the Court of Indian Offenses." Tillett v. Hodel, 730 F.Supp. 381, 384 (W.D.Okla.1990). We affirm.[1]
 
 
 2
 This action arose out of a suit commenced in the Court of Indian Offenses for the Anadarko Area by the Kiowa Business Committee (KBC) and the Kiowa Tribe of Oklahoma against Tillett and others, who are enrolled members of the tribe. Courts of Indian Offenses are established pursuant to regulations promulgated by the Bureau of Indian Affairs (BIA), 25 C.F.R. Secs. 11.1-11.32C, the purpose of which is "to provide adequate machinery of law enforcement for those Indian tribes in which traditional agencies for the enforcement of tribal law and custom have broken down for which no adequate substitute has been provided under Federal or State law," id. at Sec. 11.1(b). Because the courts are established and governed by regulations published in the Code of Federal Regulations, they are commonly referred to as "CFR courts." The regulations establishing CFR courts apply to the Anadarko Area Tribes in Western Oklahoma. Id. at Sec. 11.1(a)(19). CFR courts have jurisdiction over all civil suits "wherein the defendant is a member of the tribe or tribes within their jurisdiction, and [over] all other suits between members and nonmembers which are brought before the courts by stipulation of both parties." Id. at Sec. 11.22.
 
 
 3
 The KBC's complaint in the CFR court against Tillett alleged that she and other named individuals had been representing themselves as agents of the tribe and interfering with the daily business operations of the tribe. It sought a temporary restraining order (TRO) preventing the named individuals from continuing the alleged interference and misrepresentations. Phil R. Dupoint, a named defendant in the present action, signed and verified the complaint in his capacity as Vice-Chairman of the Kiowa Tribe of Oklahoma.
 
 
 4
 In response to the complaint and request for TRO, Tillett asserted that the plaintiffs had filed the action in retaliation for her having participated in various actions to recall the plaintiffs for violating the Kiowa Tribal Constitution. Tillett moved to dismiss the complaint on the grounds that the action was retaliatory and that the CFR court lacked jurisdiction over the action because it was not brought by the Kiowa Indian Tribe, but by individual members of the tribe who had been recalled and, therefore, did not represent the tribe in any official capacity.
 
 
 5
 Judge Philip Lujan, a judge for the CFR court in the Anadarko Area, entered a minute order granting the TRO as to Tillett and certain other defendants, who apparently appeared in court during the morning but left without being excused and failed to appear when the case was called. Tillett did not thereafter ask the CFR court to set aside the TRO. See Rule 2.54(c) of the Court Rules, Court of Indian Offenses, Anadarko Area Office Jurisdiction. I R. tab 28, ex. 6. Instead, she filed the present action in federal district court against various federal and tribal officials.
 
 
 6
 The federal district court granted summary judgment for defendants and dismissed the action to allow Tillett to bring her case in the Court of Tribal Offenses. On appeal Tillett raises several issues which we now address. First, she argues that any requirement that she submit to the jurisdiction of the CFR court because she is an Indian is a violation of her rights under: (1) the U.S. Constitution because all Kiowa, Comanche, and Arapahoe (KCA) Indians enjoy full U.S. citizenship; (2) the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. Secs. 1301-1303; (3) the Constitution of the Kiowa Tribe; and (4) the rule of naturalization provided for in the Immigration and Nationality Act, 8 U.S.C. Sec. 1401(b). Second, Tillett complains that the TRO issued by the CFR court deprives her of various First Amendment, due process, and equal protection rights. Third, she challenges the rationality of the BIA's establishment of CFR courts. Fourth, Tillett argues that the members of the KBC were recalled at a meeting of Kiowa General Council members, refused to acknowledge the recall, filed suit against her in retaliation for her participation in the recall, and misused or embezzled tribal funds. Finally, she has requested that a three-judge court be convened to consider the constitutionality of the federal regulations and statutes recognizing and authorizing CFR courts.
 
 
 7
 Tillett alleges that the district court has jurisdiction over her complaint pursuant to the Administrative Procedure Act (APA), 5 U.S.C. Secs. 702-703; 28 U.S.C. Secs. 1331, 1391; and the ICRA, 25 U.S.C. Sec. 1302(8). Federal defendants argue that: (1) the CFR courts were created pursuant to a valid exercise of Congress' plenary power to legislate for Indian affairs and, therefore, are not unconstitutional; (2) Tillett has failed to exhaust her remedies in the CFR court; and (3) her complaint raised matters constituting internal tribal disputes over which the district court has no jurisdiction.
 
 
 8
 Tillett later filed a complaint in the CFR court against the members of the KBC and two non-Indians alleging misuse of tribal funds and failure to acknowledge the recall, and seeking a TRO and permanent injunction. Her allegations and documentation in support mirrored the allegations and documentation she pleaded in the federal district court concerning misuse of tribal funds and failure to acknowledge the recall. Tillett also moved to disqualify Judge Lujan. At a hearing on KBC's motion for a permanent injunction against Tillett, Judge Lujan entered a minute order continuing the hearing and passing to another judge Tillett's oral motion to consolidate the KBC's action against her with her action against the KBC.
 
 
 9
 We review the grant or denial of summary judgment de novo, applying the same standard as the district court under Fed.R.Civ.P. 56(c). Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). "When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. However, the nonmoving party may not rest upon his pleadings; the party must set forth specific facts showing that there is a genuine issue for trial." Id. (citations omitted). Tillett argues on appeal that material issues of fact existed which precluded the court from ruling in favor of defendants, but she does not specify what those facts were, nor does our review of the record reveal any disputed material facts.
 
 
 10
 In response to Tillett's argument that CFR courts are invalid, the district court ruled that "the creation of the Courts of Indian Offenses is a valid exercise of the power of the Secretary of the Interior as delegated to him by the Congress which holds plenary power over Indian tribes." Tillett, 730 F.Supp. at 383. We agree with the district court's conclusion, as well as the rationale it recited in support of its conclusion. Id. at 382-83 (citing express and implicit congressional statutory recognition of Courts of Indian Offenses, as well as Supreme Court acknowledgement of important role of tribal courts); see also Colliflower v. Garland, 342 F.2d 369, 372-74, 378-79 (9th Cir.1965) (discussing the history and jurisdiction of Courts of Indian Offenses in general and the Court of Indian Offenses for the Fort Belknap Indian community in Montana in particular); Treaty between the United States of America and the Kiowa and Commanche Tribes of Indians, Oct. 21, 1867, art. VI, 15 Stat. 581, 583 (providing, in part, that the "United States may pass such laws ... on all subjects connected with the government of the said Indians on said reservations, and the internal police thereof, as may be thought proper").
 
 
 11
 In response to Tillett's argument that the CFR court's exercise of jurisdiction over her was unconstitutional, the district court concluded that "as a matter of comity, federal courts should not entertain a challenge to the jurisdiction of a tribal court until tribal court remedies have been exhausted." Tillett, 730 F.Supp. at 384 (citations omitted). We agree with this conclusion, as well.
 
 
 12
 Designated CFR courts that have not been supplanted by independent tribal courts pursuant to the provisions of 25 C.F.R. Sec. 11.1(d) retain some characteristics of an agency of the federal government. See United States v. Red Lake Band of Chippewa Indians, 827 F.2d 380, 383 (8th Cir.1987) ("The records of C.F.R. courts are agency records and belong to the United States."), cert. denied, 485 U.S. 935, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988); Colliflower, 342 F.2d at 378-79 ("[I]t is pure fiction to say that the Indian courts ... are not in part, at least, arms of the federal government."). In general, " '[w]e commit to administrative agencies the power to determine [the] constitutional applicability [of legislation], but we do not commit to administrative agencies the power to determine [the] constitutionality of legislation.' " McGrath v. Weinberger, 541 F.2d 249, 251 (10th Cir.1976) (quoting Administrative Law Treatise, Davis, Vol. 3, Sec. 20.04), cert. denied, 430 U.S. 933, 97 S.Ct. 1557, 51 L.Ed.2d 778 (1977). Nor do we generally commit to an administrative agency the power to determine the constitutionality of its regulations. See Spiegel, Inc. v. FTC, 540 F.2d 287, 294 (7th Cir.1976) ("Generally, federal administrative agencies are without power or expertise to pass upon the constitutionality of administrative or legislative action.").
 
 
 13
 CFR courts, however, also function as tribal courts; they constitute the judicial forum through which the tribe can exercise its jurisdiction until such time as the tribe adopts a formal law and order code. See 25 C.F.R. Sec. 11.1(d) and (e); United States v. Wheeler, 435 U.S. 313, 327, 98 S.Ct. 1079, 1088, 55 L.Ed.2d 303 (1978); Takes Gun v. Crow Tribe of Indians, 448 F.Supp. 1222, 1225 (D.Mont.1978); cf. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14-15 & n. 6, 107 S.Ct. 971, 975-76 & n. 6, 94 L.Ed.2d 10 (1987) (referring to the provision in ICRA for the education and training of judges for the Courts of Indian Offenses as support for its statement that "[t]ribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development" (citation and footnote omitted)); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 64 & n. 17, 98 S.Ct. 1670, 1680 & n. 17, 56 L.Ed.2d 106 (1978) (referring to Courts of Indian Offenses as "tribal courts").
 
 
 14
 The United States Supreme Court has held that because "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions[,] ... that examination should be conducted in the first instance in the Tribal Court itself." National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 855-56, 105 S.Ct. 2447, 2453-54, 85 L.Ed.2d 818 (1985) (footnote omitted). Therefore, as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies. See LaPlante, 480 U.S. at 16-17, 107 S.Ct. at 976-77 (diversity jurisdiction); National Farmers Union, 471 U.S. at 856-57, 105 S.Ct. at 2453-54 (federal question jurisdiction); see also Brown v. Washoe Housing Auth., 835 F.2d 1327, 1327-28 (10th Cir.1988); United States ex rel. Kishell v. Turtle Mountain Housing Auth., 816 F.2d 1273, 1276 (8th Cir.1987) ("a federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction").
 
 
 15
 Under the circumstances, the district court did not err in requiring Tillett to permit the lower and appellate tribal courts to address her challenge to their jurisdiction before raising that challenge in federal district court. Tillett, 730 F.Supp. at 384. Requiring Tillett to exhaust her tribal remedies does not preclude her from thereafter bringing a suit in federal court challenging the tribal courts' exercise of jurisdiction. Kishell, 816 F.2d at 1277. "Once the tribal courts have acted, their determination of jurisdiction is subject to review in federal court." Washoe Housing Auth., 835 F.2d at 1329.
 
 
 16
 The district court also properly required Tillett to exhaust her tribal remedies with respect to her challenge to the propriety of the TRO entered against her by the CFR court. Tillett, 730 F.Supp. at 383 (noting several procedures for challenging the TRO in the CFR courts); see National Farmers Union, 471 U.S. at 856 & n. 22, 105 S.Ct. at 2453 & n. 22.
 
 
 17
 The district court did not specifically address Tillett's argument that the BIA's establishment of the CFR court for the Anadarko Area was not rationally related to the federal government's responsibilities to the KCA tribes. The APA, 5 U.S.C. Secs. 701-706, governs judicial review of agency actions. It grants standing to anyone "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review, so long as statutes do not preclude review and the agency action is not "committed to agency discretion by law." Id. Secs. 701, 702.
 
 
 18
 The BIA issued its final rule establishing the CFR court for the Anadarko Area on June 22, 1979, 44 Fed.Reg. 37,502 (1979), after publishing its proposed rule on April 25, 1979, id. at 24,305. The BIA described the reason for establishing the CFR court as follows:
 
 
 19
 "There is an urgent and compelling need for judicial and law enforcement services on the Eastern Cherokee Indian Reservation, North Carolina and on the trust or restricted lands of those Indian tribes located in the western portion of the State of Oklahoma in the area formerly known as Oklahoma Territory. Court decisions and subsequent interpretive legal opinions have had as their effect the withdrawal of judicial and law enforcement services formerly provided to these areas by the States of North Carolina and Oklahoma respectively. The withdrawal of these services by the States has left, essentially, a void in the law and order programs in these areas and could have a serious effect on the safety of their residents as well as on the peace and dignity within the affected areas.
 
 
 20
 ....
 
 
 21
 The Attorney General for the State of Oklahoma has issued an opinion after the decision of U.S. v. Littlechief, No. CR-76-207-D, and State of Oklahoma v. Littlechief, 573 P.2d 263 (Okla.Crim.App.1978) which has as its effect the withdrawal of law enforcement and judicial services formerly provided by the State of Oklahoma on trust or restricted lands of those Indian tribes located in the western portion of the State of Oklahoma in the area formerly known as the Oklahoma Territory. This withdrawal of services by the State necessitates the establishment of an Indian court system which will provide an adequate machinery for law enforcement on the trust or restricted lands of those Indian tribes in western Oklahoma who are served by the Anadarko Area Office of the Bureau of Indian Affairs."
 
 
 22
 Id. at 37,502. We hold that the rule establishing a CFR court for the Anadarko Area is rational, based on a consideration of the relevant factors, and within the scope of authority delegated to the BIA by statute.[2] See New Mexico Envtl. Improvement Div. v. Thomas, 789 F.2d 825, 829-30 (10th Cir.1986).
 
 
 23
 To the extent Tillett sought to invoke the jurisdiction of the federal court to decide issues concerning the KBC members' alleged failure to acknowledge their recall and the misuse of tribal funds,[3] the district court properly concluded that such matters were "clearly intratribal disputes" for which Tillett would have to seek tribal remedies. Tillett, 730 F.Supp. at 384. "Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." Santa Clara Pueblo, 436 U.S. at 65, 98 S.Ct. at 1680 (emphasis added) (footnote omitted); see Wheeler v. Swimmer, 835 F.2d 259, 261-62 (10th Cir.1987) (holding that neither ICRA nor federal Civil Rights Acts provide any basis for federal jurisdiction over claims relating to alleged irregularities in tribal election); Wheeler v. United States Dep't of Interior, 811 F.2d 549, 551 (10th Cir.1987) ("when a dispute is an intratribal matter, the Federal Government should not interfere").
 
 
 24
 Finally, contrary to Tillett's assertion on appeal, the district court did not err in failing to grant her motion to convene a three-judge court. "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. Sec. 2284(a). Tillett has neither challenged the apportionment of any congressional districts or statewide legislative bodies nor alleged any facts for which an applicable congressional act would require the convening of a three-judge district court. Therefore, she is not entitled to have a three-judge court convened.
 
 
 25
 The judgment of the District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 Pursuant to 25 U.S.C. Sec. 2, the duties of the Commissioner of Indian Affairs include the "management of all Indian affairs and of all matters arising out of Indian relations."
 
 
 [3]
 Although Tillett made allegations about the ignored recall and the misuse of tribal funds, she did not seek any relief based on those allegations in her complaint. See I R. tab 1 at 8-10. Tillett also alleged that the Secretary of the Interior is violating his trust duties to the Kiowa Tribe by failing to adequately supervise tribal funds and prevent misappropriation. We do not address her contention, because she neither sought any relief from the district court nor raised the issue on appeal