Erma J. VIZENOR, Joseph B. LaGarde, Larry Cloud–Morgan, John L. Sullivan, Raymond J. Bellecourt, Gary E. Blair, and Marvin J. Manypenny, individually, and as Enrollees of the White Earth Indian Reservation, and all other members of the White Earth Indian Reservation similarly situated, Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior; Ada Deer, Director, Bureau of Indian Affairs; and Denise Homer, Acting Director, Bureau of Indian Affairs, Minnesota Office, Defendants.

Roxanne LaROSE and Kenneth L. Mitchell individually, and as Enrollees of the Leech Lake Indian Reservation, and all other members of the Leech Lake Indian Reservation similarly situated, Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior; Ada Deer, Director, Bureau of Indian Affairs; and Denise Homer, Acting Director, Bureau of Indian Affairs, Minnesota Office, Defendants.

Civil Nos. 6–95–230, 5–95–256.

United States District Court,
D. Minnesota,
Fifth and Sixth Divisions.

April 9, 1996.

Zenas Baer, Zenas Baer & Associates, Hawley, Minnesota, Miles W. Lord, Miles W. Lord & Associates, Chanhassen, Minnesota, and Wayne Faris, Faris & Faris, Minneapolis, Minnesota, for Plaintiffs in Civ. No. 6–95–230.

Roxanne LaRose, pro se, Cass Lake, Minnesota, and Kenneth L. Mitchell, pro se, Cass Lake, Minnesota, for Plaintiffs in Civ. No. 5–95–256.

Robert M. Small, Assistant United States Attorney, Minneapolis, Minnesota, and Marcia Kimball, Office of the Field Solicitor, Department of the Interior, Fort Snelling, Minnesota, of counsel, for Defendants in both actions.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiffs have filed two separate Complaints requesting that this Court order Defendants to appoint an independent trustee to oversee the operations of the White Earth and Leech Lake Bands of Chippewa Indians, with the authority to recapture all monies obtained unlawfully by members of their respective Reservation Business Committees, and the power to supervise the Bands' business matters and upcoming tribal elections. Defendants have filed Motions to Dismiss in both proceedings, on the grounds that: 1) this Court lacks subject matter jurisdiction, as Plaintiffs do not present a federal question; 2) Plaintiffs have failed to exhaust their tribal remedies; 3) Plaintiffs have failed to join indispensable parties; and 4) Plaintiffs have failed to state a claim upon which relief can be granted. While the above-captioned cases have not been consolidated, they present the same legal questions; the Court will address both cases in this opinion. For the reasons set forth below, Defendants' Motions will be granted in both cases and the Complaints will be dismissed without prejudice.

### Background

#### I. White Earth Band

The White Earth Band of Chippewa Indians is governed by a Reservation Business Committee, also known as a Reservation Tribal Council, which is composed of a Tribal Chairman, Secretary/Treasurer, and three additional district committee members, each of whom is an agent of the Band. *Vizenor* Compl. ¶ 22. Tribal Council members are elected to four-year terms, and must be enrolled members of the tribe who reside on the White Earth Indian Reservation. *Id.* ¶ 23. Each of the individual Plaintiffs is a member of the Band. *Id.* ¶¶ 1–7.

Defendants are officials of the Department of the Interior, an agency of the United States, and Defendants Deer and Homer are officials of the Bureau of Indian Affairs ("BIA"), which is an agency under the direction of the Department of the Interior. *Id.* ¶¶ 8–10, 24–25. The Secretary of the Interior, Defendant Babbitt, has the authority to manage all Indian affairs and all matters arising out of Indian relations. 25 U.S.C. §§ 1a, 2 (1994).

In August 1995, a federal grand jury indicted three governing members of the White Earth Band's Reservation Business Committee: Darrell "Chip" Wadena, Tribal Chairman; Jerry Rawley, Secretary–Treasurer; and Rick Clark, District I Committeeman. *Vizenor* Compl. ¶ 26. The indictment alleges that Wadena, Rawley, and Clark conspired to steal and misappropriate tribal funds. *Id.* ¶¶ 26–43. The Complaint further alleges that Rawley and Clark perpetrated election fraud during the 1994 tribal elections to ensure that they would remain in office. *Id.* ¶¶ 51–54.

Plaintiffs allege that they are beneficiaries of the "trust responsibility" imposed upon the federal government, and that Defendants have a positive duty to protect their rights. *Id.* ¶¶ 62–63. Plaintiffs request that this Court appoint an independent trustee to oversee the operation of the Band pending the outcome of the criminal indictments,

whose duties would include the recapture of all monies allegedly misappropriated by Wadena, Rawley, and Clark; the supervision of the tribal government and its business ventures; and the supervision of the upcoming tribal elections in June 1996. *Id.*

## II. Leech Lake Band

The Leech Lake Band of Chippewa Indians is also governed by a Reservation Business Committee, composed of a Tribal Chairman, Secretary/Treasurer, and three additional district committee members, each of whom is an agent of the Band. *LaRose* Compl. ¶ 17. Members of this committee must be enrolled members of the tribe who reside on the Leech Lake Indian Reservation, and are elected to four-year terms of office. *Id.* ¶ 18. Each of the individual Plaintiffs is a member of the Leech Lake Band, *id.* ¶¶ 1–2, and the Defendants are the same as those enumerated in the *Vizenor* Complaint, *id.* ¶¶ 3–5.

The Complaint states that a grand jury recently indicted two current members of the Leech Lake Reservation Business Committee (also known as the Reservation Tribal Council) and the Band's legal counsel: Alfred "Tig" Pemberton, Chairperson; Daniel Brown, Secretary–Treasurer; and Harold "Skip" Finn, legal counsel. *Id.* ¶ 19. The twenty-six-count indictment alleges that Finn, Pemberton, and Brown conspired to commit and did commit criminal offenses against the United States, stole and misapplied tribal funds, laundered money, and defrauded the Leech Lake Band. *Id.* ¶¶ 20–107.

Plaintiffs request the same relief, with respect to the Leech Lake Band, as the *Vizenor* Plaintiffs, alleging that if Pemberton, Brown, and Finn are left "in charge," they will perpetrate fraud in the upcoming June 1996 elections. *Id.* ¶ 111. Plaintiffs also charge that, if Pemberton and Brown retain control over tribal funds and resources pending the outcome of their criminal indictments, they will continue to commit waste. *Id.* ¶ 112.

## III. Defendants' Motion

Defendants have moved to dismiss the Complaints under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and have put forth four separate grounds for dismissal: first, Defendants argue that the Court lacks subject matter jurisdiction over the Complaints, as no federal question is involved; second, Plaintiffs have failed to exhaust the remedies available to them under the Minnesota Chippewa Tribe Constitution before filing suit in federal court and Defendants contend that this failure merits dismissal; third, the Minnesota Chippewa Tribe and the Bands, through their governments, are indispensable to this case, and that this lawsuit cannot fairly proceed without them; and fourth, no "trust responsibility" is involved in this situation, so that the Complaints fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mem. in Supp. of Mot. to Dismiss 2.

### Discussion

#### I. Standards on a Motion to Dismiss

On a motion to dismiss for failure to state a claim, the pleadings are construed in the light most favorable to the plaintiff, and the allegations in the complaint must be taken as true. *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445 (8th Cir. 1995) (citing *Ruge v. City of Bellevue*, 892 F.2d 738, 739 (8th Cir.1989)); *see also Ossman v. Diana Corp.*, 825 F.Supp. 870, 879–80 (D.Minn.1993) (and cases cited therein). This Court must resolve any ambiguities concerning the sufficiency of the claims in favor of Plaintiffs, and give them the benefit of "every reasonable inference" drawn from the "well-pleaded" facts and allegations in the Complaints. *Ossman*, 825 F.Supp. at 880 (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963)). Moreover, the Court may only dismiss counts of the Complaints if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982)).

However, if material outside of the pleadings is presented and not excluded by the Court on a 12(b)(6) motion, the motion shall be treated as one for summary judgment under Federal Rule of Civil Procedure

56. Fed.R.Civ.P. 12(b). In order to properly examine Defendants' claim that tribal remedies have not been exhausted, the Minnesota Chippewa Tribe Constitution must be examined. Both Complaints refer to the document, and rely on it as a primary, substantive source of their rights, although it is attached to neither. Defendants attached it as the sole exhibit to their Motion to Dismiss. "[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762–63 (2d ed. 1990) (citing *Sinclair Refining Co. v. Stevens,* 123 F.2d 186, 189 (8th Cir.1941), *cert. denied,* 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1203 (1942)). *See also Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991). The Court will consider the tribal Constitution only in relation to Defendants' 12(b)(6) charge.[1] Moreover, the tribal Constitution is properly considered a public document.

■ When considering a challenge to its subject matter jurisdiction, a court must distinguish between a "facial attack" and a "factual attack." *Osborn v. United States,* 918 F.2d 724, 729–30 n. 6 (8th Cir.1990). A facial attack questions the sufficiency of the pleading itself—a court reviews such an attack by examining only the pleadings, and utilizes the same standards favorable to the non-moving party as on a Rule 12(b)(6) motion to dismiss. *Id.; Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A factual attack is based on a factual controversy which must be resolved in order to determine whether subject matter jurisdiction does or does not exist. *Id.* In reviewing a factual attack, a court must normally go outside of the pleadings, and the protections granted to the non-moving party under Rule 12(b)(6) do not apply. *Smith v. Babbitt,* 875 F.Supp. 1353, 1359 (D.Minn.1995).

## II. Subject Matter Jurisdiction

### A. Federal Question

■ Before discussing the merits of the Complaints, this Court must first address the fundamental question of whether it has the ability to adjudicate the issues in this lawsuit. Plaintiffs state that the Court enjoys federal question jurisdiction under 28 U.S.C. § 1331, which reads: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs also argue that the Court's jurisdiction is supplemented by the fact that their Complaint requests mandamus relief under 28 U.S.C. § 1361.[2] Plaintiffs contend that the federal question involved is whether the "trust responsibility" of the United States should compel Defendants and the BIA to take action with respect to the current governmental situation at the White Earth and Leech Lake Reservations.

■ Defendants respond that the alleged violations of the Constitution of the Minnesota Chippewa Tribe by elected leaders do not constitute federal questions under 28 U.S.C. § 1331. Even though the Chippewa Constitution was enacted pursuant to a provision of the Indian Reorganization Act of 1934, codified at 25 U.S.C. § 476, claims based on violations of tribal law do not necessarily involve a dispute or controversy arising under federal law. *Boe v. Fort Belknap Indian*

---

1. The Court notes, however, that it could convert Defendants' Motion into one for summary judgment. Since both parties have submitted material outside of the pleadings, no actual notice to the parties would be necessary for such conversion. *See Madewell v. Downs,* 68 F.3d 1030, 1048 (8th Cir.1995).

2. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Plaintiffs request that this Court issue a writ of mandamus to direct Defendants to carry out the "trust responsibility" in a satisfactory manner.

   Section 1361, however, does not provide an independent basis for jurisdiction of a federal court, but merely supplies a remedy in actions in which jurisdiction otherwise exists. *E.g., Louisville & Nashville R.R. Co. v. Donovan,* 713 F.2d 1243, 1245 (6th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (citing *Jeno's Inc. v. Commissioner of Patents & Trademarks,* 498 F.Supp. 472, 476 (D.Minn. 1980)); *Starbuck v. City & County of San Francisco,* 556 F.2d 450, 459 n. 18 (9th Cir.1977).

*Community,* 642 F.2d 276, 279 (9th Cir.1981). Defendants' argument here represents a facial attack on the sufficiency of the federal question alleged in the Complaints, so only the Complaints will be examined to determine whether they allege a sufficient federal question, and their allegations will be taken as true.

In *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529 (8th Cir.1967), the plaintiffs brought an action against the tribe and federal officials seeking the invalidation of a tribal election. The election concerned amendments to the tribal constitution and bylaws, and was designed to poll the tribal membership for its opinion as to the disposition of tribal claim awards. The court found that the federal officials enjoyed immunity, and went on to state that the plaintiffs had not put forth a sufficient federal question under 28 U.S.C. § 1331, since the contested rights to tribal property arose out of tribal law instead of the Constitution or a federal law. *Id.* at 532.

▊ Defendants' reliance on *Twin Cities Chippewa* is misplaced, as an examination of more recent precedent demonstrates. In *Goodface v. Grassrope,* 708 F.2d 335 (8th Cir.1983), two tribal councils, one elected in 1980 and the other in 1982, were vying for BIA recognition—the BIA refused to recognize either council, desiring that the matter be resolved within the tribe. In determining whether the district court had jurisdiction, the court noted that, as here, BIA officials had been named as defendants and went on to state:

We hold that the district court did have jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA [Administrative Procedure Act], the action taken by the BIA in refusing to recognize either tribal council. Although the APA may not be used as an independent grant of subject matter jurisdiction to review agency actions, ... 28 U.S.C. § 1331 confers general jurisdiction on federal courts to review federal agency actions "subject only to preclusion-of-review statutes." We know of no statute precluding judicial review of BIA actions, and therefore we determine that the district court could review the agency action under the arbitrary or capricious standard enunciated in 5 U.S.C. § 706(2)(A).

*Id.* at 338.

▊ *Goodface* was followed and quoted at length two years later in *Runs After v. United States,* 766 F.2d 347 (8th Cir.1985), where tribal members brought an action against tribal council members and federal officials. The complaint alleged that the tribal defendants had violated their civil rights, and that the federal defendants had authorized the violations by their inaction, in a dispute over reapportionment of voting districts on the Cheyenne River Sioux Reservation. The Eighth Circuit found that the district court had federal question jurisdiction to review the BIA action, pursuant to the APA, but found that the plaintiffs had not exhausted their administrative remedies. *Id.* at 351–52. *Goodface* and *Runs After* apply here—the Complaints raise a federal question.[3] *See*

3. The disputed extent of the "trust responsibility" also supports the exercise of jurisdiction. Plaintiffs' rights are alleged to arise out of the "trust responsibility" created by federal common law. Five years after *Twin Cities Chippewa,* the Supreme Court clearly articulated that an action arising under federal *common law* falls within the general federal question jurisdiction conferred by 28 U.S.C. § 1331. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972).

Two years later, in *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the Supreme Court held that federal question jurisdiction existed in an ejectment action brought by the tribe which was based upon the original right of Indian occupancy. The Court held that the possessory rights claimed by the tribe fairly alleged a federally founded interest, as those aboriginal rights were

and had been protected by federal law, including federal common law. 414 U.S. at 677, 94 S.Ct. at 782.

Relying on *Oneida,* one district court explicitly found that the extent of the "trust responsibility" constituted a federal question, in the context of whether federal officials had a duty to care for a mentally ill tribal member:

It cannot be disputed that the history of the federal government's dealings with the Indian nations has resulted in the creation of a unique legal relationship between reservation Indians and the federal government. The dimensions of this relationship are outlined in case law dating back to the early days of the republic. Plaintiff now alleges that one facet of the Indian-government relationship is the duty assumed by the government to care for persons in the class of plaintiff's ward.

*also National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 852–53, 105 S.Ct. 2447, 2451–52, 85 L.Ed.2d 818 (1985) (whether federal law has curtailed tribal sovereignty to extent that tribal court had no jurisdiction was sufficient federal question under § 1331).

## B. Consent to Suit

■ The mere presence of a federal question does not automatically translate into subject matter jurisdiction. Defendants claim that Congress has not authorized such a suit against them, and that they are thus immune. Sovereign immunity, while distinct from the issue of whether there is federal question jurisdiction, is a jurisdictional issue which should be considered irrespective of the merits. *See Smith v. Babbitt,* 875 F.Supp. at 1359. This challenge is properly construed as a factual attack on this Court's jurisdiction. *See id.*

The *Twin Cities Chippewa* decision held that, without congressional authorization, BIA officers who were performing their official duties were immune from suit. *Id.* at 532. However, the Administrative Procedure Act (APA) has since been amended to include 5 U.S.C. § 702.[4] The Supreme Court has held that this provision operates as a general consent to suits against the federal government and federal officials, when plaintiffs seek declaratory, injunctive, or mandamus relief. *United States v. Mitchell,* 463 U.S. 206, 227 n. 32, 103 S.Ct. 2961, 2973 n. 32, 77 L.Ed.2d 580 (1983).

■ The Eighth Circuit has recently stated: "Section 702 waives the federal gov-

ernment's sovereign immunity in cases challenging agency action ... and seeking relief other than money damages." *Black Hills Institute v. South Dak. Sch. of Mines & Tech.,* 12 F.3d 737, 740 (8th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 61, 130 L.Ed.2d 18 (1994). This waiver applies even if relief is not sought under the APA. *See id.* (citing *Specter v. Garrett,* 995 F.2d 404, 410 (3d Cir.1993), *rev'd on other grounds sub nom. Dalton v. Specter,* 511 U.S. 462, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994)).

■ Under 5 U.S.C. § 701(a)(2), however, the provisions of the APA do not apply to agency action when the action "is committed to agency discretion by law." Section 702, the waiver provision, is part of the APA, and is therefore not implicated if it is found that the action is committed to agency discretion by law. *See, e.g., South Delta Water Agency v. Department of Interior,* 767 F.2d 531, 536 (9th Cir.1985) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971)); *Winnebago Tribe of Nebraska v. Babbitt,* 915 F.Supp. 157 (D.S.D.1996).

■ An agency's decision to forego enforcement proceedings is presumptively unreviewable under this provision, *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985), as is the BIA's decision of how to allocate funds from a lump-sum appropriation, *Lincoln v. Vigil,* 508 U.S. 182, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993). In *Lincoln,* the Supreme Court expressly considered the "special trust relationship existing between Indian people and the

---

We consider this simple allegation a sound basis for invoking federal jurisdiction. *White v. Matthews,* 420 F.Supp. 882, 887–88 (D.S.D.1976).
Supreme Court precedent has consistently affirmed and reaffirmed "the undisputed existence of a general trust relationship between the United States and the Indian people." *United States v. Mitchell (Mitchell II),* 463 U.S. 206, 225, 103 S.Ct. 2961, 2972, 77 L.Ed.2d 580 (1983). Whether this "distinctive obligation of trust incumbent upon the Government in its dealings" with the tribes stretches broadly enough to cover the appointment of a trustee here presents a question of the *extent* of the responsibility under federal common law. *See id.* (quoting *Seminole Nation v. United States,* 316 U.S. 286, 296, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942)).

4. The relevant portion of § 702 reads:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party....

Federal Government," but held that the relationship did not limit the agency's discretion to allocate its lump-sum appropriation from Congress. 508 U.S. at 194, 113 S.Ct. at 2032.[5] Moreover, in *Twin Cities Chippewa,* the Eighth Circuit stated that the Secretary's decision as to whether to approve amendments to tribal constitutions was not reviewable. 370 F.2d at 532–33.

Yet the Eighth Circuit, tellingly, has not mentioned § 701(a)(2) in reviewing analogous questions in *Goodface, Runs After,* and *Black Hills Institute,* although it has applied the provision to foreclose judicial review in other situations. *See, e.g., State of North Dakota ex rel. Bd. of Univ. & Sch. Lands v. Yeutter,* 914 F.2d 1031 (8th Cir.1990). Further, the Supreme Court in *Heckler v. Chaney* explicitly refused to express an opinion concerning whether § 701(a)(2) would apply to a refusal by an agency to institute proceedings based solely on the belief that it lacks jurisdiction. 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4. Plaintiffs have submitted numerous documents in which the BIA has denied requests to intervene by saying that they had no authority to do so, or that they lacked jurisdiction. *See, e.g.,* Second Belanger Aff., Exs. B, C, D, I; Baer Aff., Ex. K.[6]

The parties have not addressed the issue. This Court will assume without deciding that § 702's waiver of sovereign immunity applies and that it does possess jurisdiction to examine the other portions of Defendants' motion.

### III. Failure to State a Claim

#### A. Trust Responsibility

Plaintiffs' claims rely solely upon the generalized "trust responsibility" between the federal government and the tribes to support their requests for relief.

Plaintiffs cite *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II* ) for the proposition that a trust relationship must exist here. Yet in *Mitchell II,* the Court noted that specific language in statutory and regulatory provisions directly supported the existence of a fiduciary duty, as the provisions established "a fiduciary relationship and define[d] the contours of the United States' fiduciary responsibilities." 463 U.S. at 224, 103 S.Ct. at 2971–72. The Court stated:

> Moreover, a fiduciary relationship necessarily arises when the Government assumes such elaborate control over forests and property belonging to Indians. All of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds). "[W]here the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise) even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection." *Navajo Tribe of Indians v. United States,* 224 Ct.Cl. 171, 624 F.2d 981, 987 (1980).

463 U.S. at 225, 103 S.Ct. at 2972. The Supreme Court added that its construction of the statutes and regulations was "reinforced by the undisputed existence of a general trust relationship between the United States and the Indian people." *Id.*

▮▮▮▮ Unlike *Mitchell II,* no fiduciary duty created by an elaborate regulatory scheme exists here. "The general trust relationship in itself does not impose such duties as are erected in a complete trust with fully accountable fiduciary obligations. When the source of substantive law intended and recognized only the general, or bare, trust relationship, fiduciary obligations are not imposed on the United States." *Montana Bank of Circle, N.A. v. United States,* 7 Cl.Ct. 601, 613 (Cl.Ct.1985); *see also Eastern Band v. United States,* 16 Cl.Ct. 75, 78 (Cl. Ct.1988); *White Mountain Apache Tribe v. United States,* 11 Cl.Ct. 614, 619 (Cl.Ct.1987), *aff'd,* 5 F.3d 1506 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 191 (1994) ("Under *Mitchell [II* ],

---

**5.** The *Lincoln* Court, however, explicitly did not determine the contours of the "trust responsibility" in other contexts. *Id.*

**6.** These documents outside the pleadings may properly be considered in a factual attack on the Court's jurisdiction.

then, no fiduciary duty arises absent comprehensive regulation of Indian resources.").

The Tenth Circuit similarly distinguished *Mitchell II* in *Wheeler v. Department of Interior,* 811 F.2d 549 (10th Cir.1987). The plaintiffs in *Wheeler* lost in tribal elections and unsuccessfully challenged the fairness of the election before the Cherokee Tribal Election Committee and the Cherokee Judicial Appeals Tribunal. Plaintiffs then appealed to the BIA, which found that it was obligated to recognize the tribal court decisions. Plaintiffs subsequently filed suit in federal district court seeking review of the BIA's decision. They argued that the United States had "a duty to protect the Cherokee Indians' right to self-government and that to do so, it must step in under authority of its general trust responsibilities," and cited *Mitchell II* as authority for this proposition. *Id.* at 552.

The *Wheeler* court concluded that *Mitchell II* did not control the result of the case, since there existed no trust corpus, and no statute or regulation required involvement in Cherokee election disputes. BIA intervention was not required; indeed, it was not even permitted concerning the election dispute at issue in *Wheeler,* where a tribal forum was available to resolve the dispute. *Id.* at 553.

*Wheeler's* reasoning was followed in *Nero v. Cherokee Nation of Oklahoma,* 892 F.2d 1457 (10th Cir.1989), where plaintiffs again asserted claims against federal officials for breach of an alleged fiduciary obligation requiring the government to intervene in the tribal election process. Following *Wheeler,* the court concluded that Plaintiffs had failed to state a claim against the officials. *Id.* at 1465–66.[7]

The Eighth Circuit has also recognized that the government trust responsibility to the tribes is a limited one. In *Blue Legs v. Bureau of Indian Affairs,* 867 F.2d 1094 (8th Cir.1989) noted that "[t]he existence of a trust duty between the United States and an Indian or Indian tribe can be inferred from the provisions of a statute, treaty or other agreement, 'reinforced by the undisputed existence of a general trust relationship between the United States and the Indian people.'" *Id.* at 1100 (quoting *Mitchell II*). Here, the Court has only been presented with the "reinforcement," and not the necessary underlying "statute, treaty or other agreement."

Plaintiffs have pointed to no substantive law which imposes upon the government the duty to manage the day-to-day operations of the Bands. Indeed, such a document would be inconsistent with the federal government's commitment to tribal self-determination.[8] Instead, Plaintiffs allege in their Memorandum in Opposition, but not in the Complaints, that the Indian Gaming Regulatory Act ("IGRA"), codified at 25 U.S.C. §§ 2701–2721, is such pervasive control of a certain tribal enterprise that it gives rise to the obligation of the federal government to act here.

This is not a situation where the federal government is holding money or property in trust for the Bands, however. The IGRA does not impose comprehensive management responsibilities on the BIA to "run" tribes or to supervise tribal governments or elections merely because they operate a federally licensed gaming facility. Perhaps more importantly, this is not a suit to bring about compliance with the IGRA, or to construe certain provisions of the IGRA or agreements made pursuant thereto; it is a suit to compel the BIA to micro-manage the Bands' affairs when no basis for the interference exists. The relief requested is not to enforce or to determine compliance with the IGRA, but to virtually replace a tribal government. Indeed, Plaintiffs do not simply request a

---

7. The *Nero* court emphasized the importance of tribal self-government in holding that the "conclusion in Wheeler that the plaintiffs had no cause of action based on the government's non-intervention in the tribal election process is equally applicable to plaintiffs' claims against the federal officials here." *Id.* at 1465. The parties have not addressed whether the conclusion in *Nero* that Plaintiffs have *no* cause of action is consistent with *Goodface* and *Runs After.*

8. *See, e.g., White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665 (1980); 25 U.S.C. § 450a ("The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with and responsibility to the Indian people through the establishment of meaningful Indian self-determination policy . . .").

new election, which would by itself pose very serious sovereignty issues, but seek pervasive federal government oversight of the Bands' essential governmental functions. A more invasive action could hardly be imagined.

■ It is true that some of the misdeeds alleged to have been committed by council members involve gaming proceeds, see *Vizenor* Compl. ¶¶ 35–43, and that the Complaints allege that improper distributions were made to Reservation Business Committee members in apparent violation of the IGRA. The monies that were the subject of the alleged misappropriations, however, do not constitute property held in trust by the federal government, but are instead tribal property. As this Court has recently noted:

> Although the federal government has a fiduciary obligation to protect property held in trust for the tribe, *United States v. Mitchell,* ... the funds used to make per capita gaming distributions do not form part of this trust corpus. These funds are generated by the Community's corporate gaming enterprise, are managed by the Community, and have no different status than other revenues from tribal businesses.

*Smith v. Babbitt,* 875 F.Supp. 1353, 1369 (D.Minn.1995).

The relief requested by Plaintiffs in the Complaints will not be granted by this Court on the basis of the "trust responsibility."

■ However, "a complaint should not be dismissed if it states a claim on any legal theory." *Haddock v. Board of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985). While the "trust responsibility" does not form the foundation of a cognizable claim in this situation, the Eighth Circuit has strongly implied that the Administrative Procedure Act ("APA") is available to Plaintiffs. In *Runs After,* the plaintiff tribal members claimed that the tribal council had denied them the rights to vote and to run for political office, and that the federal defendants failed to take any action to prevent the de-

fendant tribal officials from violating appellants' rights. Quoting from *Goodface,* the Eighth Circuit held that the district court was empowered to review the BIA action (or, more accurately, inaction) under the "arbitrary and capricious" standard enunciated in 5 U.S.C. § 706(2)(A) of the APA. 766 F.2d at 351 (quoting *Goodface,* 708 F.2d at 338). The claim in *Runs After* against the federal defendants was dismissed, not on its merits or for lack of jurisdiction, but for failure to exhaust administrative remedies. *Id.* at 351–52. In *Goodface,* the Eighth Circuit affirmed a district court's order commanding the BIA to recognize a single tribal government; however, the recognition was only to continue until the dispute was resolved by a tribal court. 708 F.2d at 339.[9] Thus, Eighth Circuit precedent appears to support the viability of a claim under the APA in an appropriate situation to review BIA action or inaction. Whether this Court may at this time entertain such a claim hinges upon whether tribal remedies have been exhausted.

### B. Tribal Remedies

The *Vizenor* Complaint contends that the *Vizenor* Plaintiffs are entitled to "all the rights and privileges attendant to being enrollees of the Minnesota Chippewa Tribe." *Vizenor* Compl. ¶ 15. It further focuses on rights guaranteed by the Minnesota Chippewa Tribe Constitution, especially the right to vote for tribal leaders and members of the Reservation Business Committee. *Id.* ¶¶ 19–20, 49. The conduct of the upcoming elections is a particular concern in both complaints. *Id.* ¶ 64; *LaRose* Compl. ¶ 111.

It is clear that the rights sought to be enforced are rights which Plaintiffs receive by virtue of their membership in the Minnesota Chippewa Tribe under tribal law. Certainly, Plaintiffs enjoy the protection of the federal Constitution generally, but cannot assert a full range of constitutional rights vis-a-vis their tribal government. In passing the Indian Civil Rights Act ("ICRA"), Congress provided for certain restrictions upon tribal

---

**9.** The *Goodface* court noted:

> The tribal court has handled elections disputes in the past, and is available to handle this dispute as well. It is essential that the parties seek a tribal remedy, for as previously noted,

> substantial doubt exists that federal courts can intervene under any circumstances to determine the rights of the contestants in a tribal election dispute.

> *Id.* at 339.

governments similar to those contained in the Bill of Rights and the Fourteenth Amendment. *See* 25 U.S.C. § 1302. The only relief available to tribal members in *federal* courts under the ICRA, however, is a writ of habeas corpus. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). In the *Santa Clara Pueblo* decision, the Supreme Court expressly considered tribal sovereignty and the importance placed on tribal self-government in limiting the relief available to tribal members in federal court. 436 U.S. at 65–72, 98 S.Ct. at 1681–84.

The maintenance of tribal self-government is the driving force behind the doctrine of exhaustion of tribal remedies. Plaintiffs contend that exhaustion of tribal remedies would be futile in this instance and should not be required. The Court notes that the Minnesota Chippewa Tribe Constitution does not create tribal courts, nor does it expressly vest judicial authority in a discrete body, although the *Vizenor* Complaint indicates that a judicial system exists at least with respect to election disputes. *Vizenor* Compl. ¶ 50.

Defendants point to the provisions of the Minnesota Chippewa Tribe Constitution which govern the removal of tribal council members. Section 3 of Article X of that Constitution states:

> Any member of the Reservation from which the Reservation Business Committee members is elected may prefer charges by written notice supported by the signatures of no less than 20 percent of the resident eligible voters of said Reservation, stating any of the causes for removal set forth in Section 2 of this Article, against any member or members of the respective Reservation Business Committee. The notice must be submitted to the Business Committee. The Reservation Business Committee shall consider such notice and take the following action:
> (a) The Reservation Business Committee within fifteen (15) days after receipt of the notice or charges shall in writing notify the accused of the charges brought against him and set a date for a hearing. If the

Reservation Business Committee deems the accused has failed to answer charges to its satisfaction or fails to appear at the appointed time, the Reservation Business Committee may remove as provided in Section 2 or it may schedule a recall election which shall be held within thirty (30) days after the date set for the hearing. In either event, the action of the Reservation Business Committee or the outcome of the recall election shall be final.

If the Reservation Business Committee does not act on the removal petition, a remedy is provided:

> In the event the Reservation Business Committee fails to act as provided in Sections 3 and 4 of this Article, the Reservation membership may, by petition supported by the signatures of no less than 20 percent of the eligible resident voters, appeal to the Secretary of the Interior. If the Secretary deems the charges substantial, he shall call an election for the purpose of placing the matter before the Reservation electorate for their final decision.

*Id.*, art. X, sec. 5.[10]

Additionally, a more direct remedy exists when a tribal leader is accused of improprieties—tribal members have the power to "throw the rascals out." Under the Minnesota Chippewa Tribe Constitution, all members of all Reservation Business Committees are elected. *Id.*, art. IV. Plaintiffs contend that if a trustee is not appointed to oversee the upcoming elections, and "if the same individuals are left in charge, they will perpetrate the same fraud." *LaRose* Compl. ¶ 111. Yet it is clear from the *Vizenor* Complaint that a system does exist that allows tribal elections to be challenged. In 1994, the White Earth election results were challenged—a special election review board was convened, and the matter was apparently appealed to the Court of Appeals for the Minnesota Chippewa Tribe. *Vizenor* Compl. ¶ 50.

The Eighth Circuit has recently explained the exceptions to the requirement of exhaustion of tribal remedies. *See Reservation Tel.*

10. Defendants claim that if the remedies provided by the tribal Constitution "are thwarted by the incumbents, the Secretary will follow the provisions of Article X Section 5 of the [tribal] Constitution." Defs.' Mem. 7.

*Coop. v. Three Affiliated Tribes of Fort Berthold Reservation,* 76 F.3d 181, 184–85 (8th Cir.1996) (citing *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 975–76, 94 L.Ed.2d 10 (1987)). In *Reservation Telephone,* two corporations challenged the validity of a tribal tax levied on their telephone lines crossing tribal lands in federal court. In affirming the dismissal of the case without prejudice for failure to exhaust tribal remedies, the court stated that "[t]he rule requiring exhaustion of tribal remedies in matters related to reservation affairs is an important aspect of the federal government's longstanding policy of supporting tribal self-government." *Id.* at 184. Of course, the relief requested by Plaintiffs would virtually eliminate the Bands' ability to govern themselves without federal interference during the trustee's tenure. The court further observed:

> [T]he United States Supreme Court has recognized few exceptions to the general requirement of exhaustion of tribal remedies. In *National Farmers Union,* the Supreme Court enumerated these exceptions, stating that exhaustion would not be required "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdiction prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *National Farmers Union,* 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21 (internal citations omitted). Barring the presence of one of these exceptions, a federal court should stay its hand in order to give tribal forums the initial opportunity to determine cases involving questions of tribal authority. *Iowa*

**11.** While these exhaustion cases involve the imposition of tribal law on non-members, their principles are applicable here. Indeed, even a stronger case is presented when the underlying dispute is between tribal dissidents and tribal leaders.

**12.** Tribal courts are of course included in the requirement of exhaustion of tribal remedies. Rights arising out of the Minnesota Chippewa Tribe Constitution must be determined at the tribal level, as federal courts do not have jurisdiction to interpret a tribal constitution or tribal laws. *Runs After,* 766 F.2d at 352; *Smith v. Babbitt,* 875 F.Supp. at 1367 n. 13. Unless a federal court were to determine that the tribal

*Mutual,* 480 U.S. at 15–16, 107 S.Ct. at 976–77.

*Id.* at 184.[11]

Plaintiffs claim futility of the removal procedure and imply that the elections will undoubtedly be rigged as well. These assertions, while apparently not without some basis in historical fact, are not sufficient to excuse non-exhaustion, given the overwhelming ramifications for tribal self-government. Indeed, in *Reservation Telephone,* the Eighth Circuit hinted that even if the tribal tax were clearly preempted by federal law, the exhaustion requirement might still apply, as "principles of comity would arguably support a rule which gives a tribal court the first opportunity to declare the law invalid." *Id.* at 186 n. 5.

■ Thus, Plaintiffs must exhaust their tribal remedies under the tribal Constitution before pursuing a claim in federal court.[12] The Complaints will therefore be dismissed *without* prejudice.[13]

### Conclusion

Accordingly, based on the foregoing, and all of the records, files, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss in *Vizenor v. Babbitt,* Civ. No. 6–95–230 (Doc. No. 7) is **GRANTED. IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss in *LaRose v. Babbitt,* Civ. No. 5–95–256 (Doc. No. 3) is **GRANTED.** The Complaints in both *Vizenor* (Doc. No. 1) and *LaRose* (Doc. No. 1) are **DISMISSED WITHOUT PREJUDICE.**

court lacked jurisdiction, Plaintiffs would be precluded from relitigating issues raised and resolved in the tribal forum. *Id.* (citing *Iowa Mutual,* 480 U.S. at 13, 107 S.Ct. at 978 and *United States v. Turtle Mountain Housing Auth.,* 816 F.2d 1273, 1277 n. 2 (8th Cir.1987)). However, neither the pleadings nor the tribal Constitution indicates whether a tribal court system is available here outside of the rubric of election disputes.

**13.** It is unnecessary to reach the question of whether dismissal is required under Federal Rule of Civil Procedure 19 because Plaintiffs have failed to join their respective tribal governments.

LET JUDGMENT BE ENTERED AC-
CORDINGLY IN BOTH CASES.