## In re DIGI INTERNATIONAL, INC. SECURITIES LITIGATION.

### Civil Master File No. 97–5(JRT/RLE).

United States District Court,
D. Minnesota.

May 22, 1998.

Richard A. Lockridge, Gregg M. Fishbein, and Karen M. Hanson, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, Lee Squitieri and James S. Notis Abbey, Gardy & Squitieri, New York, NY, Robert M. Kornreich and Lawrence D. Levi, Wolf Popper, New York, NY as lead counsel for plaintiffs.

John A. Hapern, Harold B. Koritz, John A. Halpern & Associates, Minneapolis, MN, I. Walton Bader, Benedict Bader, Bader & Bader, White Plains, NY, for Louisiana State Employees Retirement System plaintiffs.

Wendy J. Wildung, Jeffrey D. Hedlund, Ahna M. Thoresen, Faegre & Benson, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

This action involves allegations of securities fraud. In a consolidated amended complaint, a putative class of persons who purchased Defendant Digi International, Inc.'s ("Digi") stock between January 25, 1996 and December 23, 1996 ("class plaintiffs") allege securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and controlling person liability under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). In a separate amended complaint, the Louisiana State Employees Retirement System ("LSERS"), a purchaser of Digi stock proceeding individually, alleges similar violations under sections 10(b) and 20(a). LSERS brings additional claims under Section 18(a) of the 1934 Act, 15 U.S.C. § 78r(a), and pursuant to the Minnesota common-law theories of fraud and negligent misrepresentation. Class plaintiffs and LSERS (collectively "plaintiffs") claim, in es-

sence, that defendants Digi, Ervin F. Kamm, Jr., Gerald A. Wall, and Gary L. Deaner (collectively "defendants") knowingly or recklessly used improper accounting methods which allowed Digi to report artificially inflated earnings and concealed various material facts which would have informed the public of Digi's true financial condition during the relevant time period.

Defendants have brought two motions to dismiss. In their first motion, defendants move to dismiss the class plaintiffs' complaint on the grounds that the Complaint fails to meet the pleading standards of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) ("Reform Act"), and Fed. R.Civ.P. 9(b) ("Rule 9(b)"), and fails to state a claim under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). Defendants bring a parallel motion against LSERS on similar grounds and on the ground that LSERS's complaint fails to comply with the requirements of Fed. R.Civ.P. 8 ("Rule 8"). For the following reasons, defendants' motions are granted in part and denied in part.

## FACTUAL ALLEGATIONS

Plaintiffs' two complaints set forth similar factual allegations, although class plaintiffs' allegations are somewhat more detailed. The Court summarizes these allegations as if true solely for the purpose of addressing defendants' motions.

Digi is a corporation based in Minnetonka, Minnesota. During the class period, its stock was traded actively on the NASDAQ national market. Digi produces data communications hardware and software that permit the networking of multiple users or devices to a single processing unit.

During the class period, individual defendant Kamm was the President, CEO, and a director of Digi; Wall was Digi's Chief Financial Officer, Treasurer, and a vice president; and Deaner was a vice president of Digi and a general manager of the companies' "Local Area Network" and remote access products area. As such, these defendants had access to various non-public information during the class period and had the authority to control the contents of Digi's public disclosures. Each of these defendants' compensation was based on an aggressive pay-for-performance system de-

pendent on Digi's financial performance. Deaner sold his entire holdings of Digi common stock (15,000 shares) in early May 1996.

In October 1995, Digi invested in a development-stage, remote access company called AetherWorks. The investment in AetherWorks was in the form of a convertible secured note in a principal amount exceeding $3.3 million. During the class period, AetherWorks suffered significant operating losses.

During the relevant period, defendants made a number of disclosures regarding Digi's investment in the convertible secured note. However, defendants failed to disclose other facts regarding this investment in various public statements. Plaintiffs point specifically to allegedly misleading statements and material omissions in Digi's form 10–Q reports in its first, second, and third quarters of fiscal year 1996; its January, April, and July announcements of earnings; and in its July 2, 1996 press release and its statement to analysts.

For example, Digi failed to identify AetherWorks by name or inform investors that AetherWorks was a "development stage company" until August 1996. It did not disclose the existence of its convertible secured note until four months after it was executed, and did not disclose until August that the note was convertible into more than twenty percent of AetherWorks's outstanding stock. Digi further failed to announce to the public that the payment of interest on the note was deferred until the earlier of December 1998 or the receipt of proceeds of AetherWorks' initial public offering. Also, Digi never disclosed during the class period that its security for the note was solely in AetherWorks inventory or that AetherWorks was without substantial revenue. Moreover, it failed to inform investors that it was heavily involved in the management of AetherWorks, was providing all of the funding for AetherWorks' 1996 activities, and probably would be obligated to guarantee $1.1 million in lease obligations incurred by AetherWorks.

Plaintiffs further allege Digi never disclosed that its investment (the note) in AetherWorks was an illiquid investment which

presented a substantial risk that neither principal nor interest would be paid on a timely basis or at all. The note was amended on June 19, 1996 to increase Digi's financial obligations to AetherWorks, including, among other modifications, the purchase of an additional convertible note in the principal amount of approximately $1.4 million. This change was not revealed to the public until August 13, 1996.

During most of the class period, Digi accounted for the AetherWorks investment using the "note receivable" method rather than the "equity method" or some other method of accounting. Plaintiff alleges that Accounting Practices Bulletin 18 ("APB 18") mandates that the equity method be used in accounting for investments such as the AetherWorks investment. Under the note receivable method, the AetherWorks' note was included in financial calculations at face value or substantially face value. The result of Digi's allegedly erroneous employment of this accounting method was to inflate Digi's financial performance during the class period by failing to take into consideration the adverse effect of Digi's investment in AetherWorks. Plaintiffs further allege that Digi improperly accounted for its software development costs and inventory sales and returns, which had the effect of further inflating the earnings that Digi reported to the public.

Finally, plaintiffs claim that Digi failed to disclose in the first two quarters of fiscal year 1996 (October 1, 1995 to September 30, 1996) the material adverse risk its return policies posed to its third and fourth quarter results. Specifically, Digi's "new sales program" extended the time customers had to return products and rotate inventory. Digi failed to inform the public that the first and second quarter financial results would be inflated by the program because the sales returns and inventory adjustments would be shifted to the latter half of the fiscal year. Moreover, when Digi did inform the market after the third quarter that earnings were below expectations, it falsely stated that product returns had unexpectedly increased.[1]

Based on these alleged omissions and improper accounting techniques, plaintiffs assert that defendants issued materially false and misleading statements regarding Digi's financial condition, earnings, and outlook. On November 14, 1996, Digi publicly announced preliminary unaudited yearly results which were below analysts' consensus estimates. Digi indicated that these results were only preliminary because it had not yet had time to resolve the appropriate accounting treatment for its investment in AetherWorks. Digi indicated that if it were required to apply the equity method of accounting, Digi's share of AetherWorks' fourth quarter operating losses would range from $0.15 to $0.20 per share. Digi did not indicate in the release what effect application of the equity method would have on stated earnings for the first three quarters of fiscal year 1996. Digi's stock declined modestly after this announcement.

On December 23, 1996, Digi disclosed that its quarterly financial reports for the first three quarters of fiscal 1996 would have to be restated to reflect its share of AetherWorks' losses. Digi stated that it should have used the equity method and included AetherWorks' $3.6 million loss for fiscal year 1996. Digi also disclosed that it had expensed certain software development costs which it had improperly capitalized previously and had underestimated Digi's annual effective income tax rate, which also had inflated its earnings. In all, Digi's actual reported earnings for fiscal year 1996 were approximately thirty-seven percent lower than previously reported.

As a result of this announcement, Digi's stock dropped sharply—almost four dollars per share—to close at $8-7/8 per share on December 24, 1996. This amount was significantly lower than the price-per-share levels at which the stock had traded earlier in the class period.

Defendants note that Digi's July 2, 1996 press release regarding below-expected earn-

---

1. LSERS appears to put forth an additional, related theory regarding defendants' failure to maintain a reasonable reserve for potential returns. It claims that Digi willfully and deliberately understated its reserve for the return of defective components by offering distributors extended payment terms so as to encourage the distributors to delay the return of such components to Digi.

ings and its November 14, 1996 preliminary, unaudited yearly results were voluntary disclosures that preceded the standard times at which Digi announced quarterly and yearly results. Defendants also point out that the July 2 announcement, which precipitated a $9.25 drop in Digi's stock price, did not address AetherWorks in any fashion. Finally, defendants allege that Kamm purchased 5,000 shares in the middle of the second quarter of fiscal year 1996, and Deaner—who had sold all of his shares in May 1996—purchased 24,000 shares during the fourth quarter. Plaintiffs object to defendants' references to these purchases because they are not contained in the complaints.

## ANALYSIS

In considering defendants' motions to dismiss, the factual allegations set forth in plaintiffs' amended complaints are assumed to be true, and the Court will draw all reasonable inferences in favor of plaintiffs. *See, e.g., Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). The issue before the Court is not whether plaintiffs will ultimately prevail at trial, but rather whether they are entitled to proceed with their claims. *See, e.g., Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982). Also, where relevant, this Court may consider documents relied upon in plaintiffs' complaints and of undisputed authenticity, even though they are not physically attached to the pleading. *See, e.g., Vizenor v. Babbit,* 927 F.Supp. 1193, 1198 (D.Minn.1996).

### I. Rule 9(b) and the Reform Act

Defendants argue plaintiffs' allegations of fraud are insufficient under the pleading standards set forth in Rule 9(b) and the Reform Act. The pleading standards set forth in Rule 9(b) apply to all fraud and misrepresentation claims, including LSERS's common-law causes of action. *See Paulucci v. William Morris Agency, Inc.,* 952 F.Supp. at 1335, 1342 (D.Minn.1997) (dismissing under Rule 9(b) a common-law fraud claim for lack of particularity). However, the Reform Act requirements apply only to the federal securities law claims. *See* 15 U.S.C. § 78u–4(a)(1) (stating the act applies to actions

brought under the chapter in which it is contained).

Also, although the parties do not raise the issue, the Reform Act appears to apply only to securities fraud actions brought as class actions. *See* 15 U.S.C. § 78u–4(a)(1) (stating the Reform Act applies to "plaintiff class action[s] pursuant to the Federal Rules of Civil Procedure"). Thus, while the Reform Act requirements clearly apply to class plaintiffs' complaint, they may not govern LSERS's complaint because LSERS is proceeding on an individual basis. Nevertheless, in this jurisdiction, the requirements under Rule 9(b) are sufficiently similar to those under Reform Act that, in these circumstances, the fact that the Reform Act does not apply to LSERS is not dispositive.[2]

Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." As the Eighth Circuit recently reiterated, the purposes of Rule 9(b) are, among other things, to deter fishing expeditions of unknown wrongs designed to compel *"in terrorem* settlements" and to ensure the defendants are given sufficient notice of the allegations against them. *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549 (8th Cir.1997) (quoting *Weisburgh v. St. Jude Med., Inc.,* 158 F.R.D. 638, 642 (D.Minn.1994), *aff'd,* 62 F.3d 1422 (8th Cir. 1995) (unpublished) (per curiam)). Rule 9(b) therefore requires that the complaints set forth in detail such matters as the time, place, and contents of the false representations and the identity of the person making each representation. *See id.* In other words, the complaints must specify the "who, what, when, where, and how" of the alleged fraud. *See, e.g., DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Weisburgh,* 158 F.R.D. at 641.

In this jurisdiction, Rule 9(b) is strictly applied in the securities fraud context. *See,*

---

**2.** For the reasons set forth below, the Court finds that those allegations sufficient under Rule 9(b) are also sufficient under the Reform Act. Likewise, the Court concludes that the allegations that fail to meet the pleading standards under the Reform Act are also inadequate under Rule 9(b).

*e.g., Weisburgh,* 158 F.R.D. at 642. In applying Rule 9(b)'s requirements in securities cases, courts in this district have indicated that the complaint must set forth facts giving rise to a strong inference of scienter. *See, e.g., In re Lifecore Biomedical, Inc., Sec. Litig.,* 159 F.R.D. 513, 516 (D.Minn.1993) ("[A] complaint must adduce specific facts which give rise to a 'strong inference' of fraudulent intent."); *see also In re Buffets Inc. Sec. Litig.,* 906 F.Supp. 1293, 1300 (D.Minn.1995) (concluding that under Rule 9(b), a complaint "must set forth the facts explaining why it is claimed that the representations were known by each of the Defendants to be untrue or misleading when they were made"). Thus, even when the Reform Act is inapplicable, a complaint must give rise to a strong inference of scienter.

■ The Reform Act likewise requires particularity, providing in relevant part:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1). In addition, the Reform Act requires that the specific facts set forth in a complaint create a strong inference of fraudulent intent:

> In any private action arising under this chapter in which plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2). Thus, to satisfy both Rule 9(b) and the Reform Act, a complaint must set forth with particularity facts which create the strong inference of scienter.[3]

## II. The Sufficiency of Plaintiffs' Allegations Supporting Their Section 10(b) and Section 20(a) Claims.

### A. Allegations Relating to Aether-Works

■ The Court finds plaintiffs' (class plaintiffs' and LSERS's) allegations regarding the AetherWorks investment are adequate under Rule 9(b) and the Reform Act. First, the Court finds that both complaints contain sufficient detail to meet the standards for particularity. Both complaints specify which of Digi's public statements—including press releases and Form 10–Qs—are misleading and who was responsible for those disclosures. Moreover, both complaints detail why Digi's disclosures were misleading with regard to AetherWorks: these statements failed to disclose various facts regarding AetherWorks, the nature and terms of Digi's note, Digi's involvement in the management of AetherWorks, and how Digi failed to properly account for the investment. The complaints then set forth with precision the difference between Digi's original financial disclosures and its revised disclosures once it determined that it should use the equity method. Finally, the complaints have set forth facts—Deaner's sale of shares and the individual defendants' compensation structure—in an attempt to demonstrate a motive for failing to inform the public of the true nature and extent of Digi's investment and involvement in AetherWorks. Thus, the Court finds plaintiffs' allegations have set forth with particularity the "who, what, when, where, and how" of the alleged fraud.

Moreover, the Court rejects defendants' contention that the AetherWorks allegations are inadequate under the Reform Act because they are unsupported "information and belief" allegations. As an initial matter, the Court declines to adopt the view that the language of the Reform Act mandates that each and every "information and belief" allegation must be supported by underlying doc-

---

**3.** The parties dispute the extent to which the Reform Act creates a pleading standard stricter than that which had been applied (under Rule 9(b)) prior to its enactment. Certainly the Reform Act raises the bar somewhat in terms of "information and belief" pleadings, and it re-

quires a strong inference of scienter in those federal circuits which, prior to its enactment, had not enforced such a requirement. Except as discussed below, however, the Court finds it unnecessary to resolve whether there are additional differences between these two provisions.

umentary evidence. Nevertheless, with regard to the AetherWorks investment, the Court finds that material allegations are supported by particularized facts derived from Digi's various public disclosures and its statements after it determined, in late 1996, that it needed to modify its previous disclosures.

█ The Court also finds that the facts alleged regarding AetherWorks give rise to a strong inference that Digi and at least some of the individual defendants acted with scienter. The parties dispute whether the concept of scienter under Section 10(b) encompasses reckless conduct in the wake of the Reform Act, and if so, what types of behavior rise to the level of recklessness. The Court need not resolve this issue, however, because plaintiffs' allegations regarding AetherWorks give rise to a strong inference of conscious misbehavior.

Taken as a whole, the allegations provide strong circumstantial evidence of conscious misbehavior, which clearly is sufficient under both the Reform Act and Rule 9(b). *See, e.g., Norwood Venture Corp. v. Converse Inc.*, 959 F.Supp. 205, 208–09 (S.D.N.Y.1997) (finding the plaintiff established an inference of scienter under the Reform Act by pleading specific facts that constitute strong circumstantial evidence of conscious misbehavior); *In re Silicon Graphics, Inc. Sec. Litig.*, No.

C96–0393, 1996 WL 664639 at *6 (N.D.Cal. September 25, 1996) (applying the same standard).[4] The facts alleged strongly suggest that some of the defendants were aware that their financial statements during the class period were false or misleading when made, to the extent that these statements neither accurately accounted for nor made sufficient disclosures regarding Digi's AetherWorks investment.

Specifically, the strong inference arises from defendants' failure to disclose the full nature and extent of Digi's investment and involvement in AetherWorks, their failure to disclose other facts regarding AetherWorks' business, their inappropriate use of the "note receivable" method for accounting for this investment, the individual defendants' positions of control in Digi and responsibility for various public disclosures, the individual defendants' incentive-based compensation, and the substantial impact on Digi's performance and stock price once Digi fully disclosed and correctly accounted for its AetherWorks investment.[5] These allegations—which in combination provide a clear motive for misleading the public and the particular disclosures that severely misled or misinformed the public regarding the AetherWorks investment and Digi's financial condition—constitute

4. The parties further dispute whether the Court should apply the Second Circuit's "motive and opportunity" test for establishing a strong inference of fraud. *See, e.g., San Leandro Emergency Medical Plan v. Philip Morris Co.*, 75 F.3d 801, 813 (2nd Cir.1996) ("The requisite 'strong inference' of fraud may be established ... by alleging facts to show that defendants had both motive and opportunity to commit fraud ....."). Courts are split over whether this standard remains viable in the wake of the Reform Act. *Compare In re Silicon Graphics, Inc. Sec. Litig.*, 1996 WL 664639, at *6 (holding that under the Reform Act a plaintiff must allege specific facts that constitute strong circumstantial evidence of conscious misbehavior); *Friedberg v. Discreet Logic Inc.*, 959 F.Supp. 42 (D.Mass.1997) (same) *with Zuckerman v. Foxmeyer Health* Corp., 4 F.Supp.2d 618, ——— —— (N.D.Tex.) (stating "motive and opportunity" pleadings remain viable after the Reform Act); *Marksman Partners, L.P. v. Chantal Pharmaceutical*, 927 F.Supp. 1297, 1311–12 (C.D.Cal.1996) (same).

Because plaintiff's allegations regarding AetherWorks survive even under a standard requiring circumstantial evidence of conscious misbehavior—rather than mere allegations of motive and

opportunity—the Court need not resolve this issue either. Also, as set forth in the next section, plaintiffs' other allegations fail even under the less rigorous Second Circuit standard because they completely lack particularity. Moreover, the "new sales program" allegations discussed below would not survive the motive and opportunity test because they fail to set forth a plausible motive.

5. Plaintiffs also allege that Deaner sold his shares during the class period. The Court finds plaintiffs' allegations are sufficient without considering this isolated sale of shares by one of the individual defendants.

The Court agrees with plaintiffs that Digi cannot rely on the alleged purchase of shares by Kamm and Deaner—evidence outside the four corners of the complaints—to support its motion to dismiss. Even if the Court were to consider these purchases at this stage of the litigation, however, given that the complaints are sufficient without consideration of the Deaner's sale of shares and that the Court has no way to determine the nature of, or reasons behind the alleged purchases, such purchases would not defeat the inference of scienter.

strong circumstantial evidence of conscious behavior on the part of defendants.

Defendants argue strenuously that the allegations of fraud must be rejected as implausible. The Court disagrees. The individual defendants stood to gain by concealing the true nature of Digi's investment in AetherWorks and AetherWorks' early difficulties.[6] This concealment allowed them to publish strong financial results during the early part of the fiscal year. If Digi's investment in AetherWorks had paid off later in the year, or at least if AetherWorks had been somewhat successful, defendants could have avoided issuing revised or negative financial results. Thus, Digi's financial condition could have appeared positive throughout the entire class period, thereby influencing the individual defendants' compensation.

■ The Court declines defendants' invitation to adopt a *per se* rule that executive compensation premised on performance can never form part of the basis supporting an inference of scienter. The cases cited by defendants merely stand for the proposition that performance-based compensation alone, or combined with only poor economic results or conclusory allegations, is insufficient to support a claim for fraud. *See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2nd Cir.1995) ("Therefore, we hold that the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter."); *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994) (holding the executive compensation *alone* is insufficient to give rise to a strong inference of scienter). In the circumstances presented here, in which the individual defendants' performance-based compensation could be enhanced significantly by inflated financial results caused by particularized material omissions of fact and misleading accounting practices, such compensation constitutes evidence of conscious misbehavior.

Also, at this stage of the litigation, the Court must reject defendants' contention that their accounting treatment cannot support an inference of fraud because (1) accounting principles are complex and subject to differing interpretations and (2) APB 18 does not refer to convertible notes. Plaintiffs allege that defendants' use of the note receivable method was not only mistaken, but also clearly inappropriate with regard to the AetherWorks investment; defendants respond that the appropriate method of accounting for the AetherWorks investment was open to interpretation during the class period. The evidence, in the form of expert testimony or otherwise, ultimately may prove defendants to be correct, but the Court cannot resolve this issue on a motion to dismiss.

Likewise, the Court is unable to conclude as a matter of law that APB 18, as customarily applied, is inapplicable to convertible notes. While it is true that APB 18 refers only to stock, the Court is unable to rule out the possibility that APB 18's guidelines has been interpreted to apply to notes convertible to stock and that generally accepted accounting practices ("GAAP") mandate such an approach.

■ Furthermore, if, as plaintiffs allege, Digi's accounting treatment clearly violated GAAP, this fact, combined with other omissions regarding the nature of Digi's relationship with AetherWorks, strongly suggests defendants' behavior was conscious. These circumstances—which involve the alleged violation of accounting principles *and* other related omissions of material facts regarding AetherWorks—are distinguishable from those cases in which courts have held that the mere misapplication of GAAP cannot support an inference of fraud or scienter. A violation of GAAP, combined with other circumstances suggesting fraud, may create a strong inference of scienter. *See, e.g., Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1255–56 (N.D.Ill.1997) (stating that although an allegation of a violation of GAAP standing alone will be insufficient, such an allegation, combined with a resulting, drastic overstatement of financial results or other allegedly misleading statements can give rise to a strong inference of scienter); *Marksman Partners*, 927 F.Supp. at 1313 ("Although it

---

6. Although Digi made certain disclosures regarding the AetherWorks investment, it did not disclose the full extent of this investment and other

facts regarding AetherWorks and the various risks to Digi. Such limited disclosures do not rule out a motive to defraud.

is true that a violation of GAAP in itself will generally not be sufficient to establish fraud, when combined with other circumstances suggesting fraudulent intent, however, allegations of improper accounting may support a strong inference of scienter." (Citation omitted)). Thus, taken as true, plaintiffs' allegations regarding APB 18 support an inference of scienter.

Finally, the Court finds that Digi's additional disclosures regarding AetherWorks in August 1996, its ultimate decision to use the equity method in evaluating the AetherWorks, and its issuance of revised financial statements for fiscal year 1996 do not defeat the inference that defendants consciously mislead the public earlier in the year. This later conduct does not rule out earlier fraudulent behavior.[7] Given AetherWorks' further decline late in fiscal year 1996 and other circumstances, defendants may have decided at that point to abandon their previous approach.[8]

The allegations of fraud premised on false or misleading statements and accounting practices relating to AetherWorks are sufficient to avoid dismissal. To this extent, defendants' motion to dismiss under Rule 9(b), the Reform Act, and Rule 12(b)(6) is denied.

## B. Other Alleged Misleading or False Disclosures

Defendants also argue that plaintiffs' allegations regarding the "new sales program," returned goods and inventory, software development expenditures, and the applicable tax rate, are inadequate under Rule 9(b) and the Reform Act. As to these allegations, the Court agrees that plaintiffs' pleadings are insufficient.

Plaintiffs' allegations regarding the new sales program and product returns fail under both Rule 9(b) and the Reform Act because they lack particularity and do not give rise to a strong inference of scienter. These allegations lack particularity with regard to the terms of the new sales program, what products were included, how long the returns would be extended, how the program encouraged customers to delay returns or stock rotations, how this program differed from Digi's previous policies, and how this program affected the total number of returns. Without such specified allegations, the Court finds that both complaints have failed to set forth with sufficient particularity how or why Digi's failure to discuss its return policy in the first two quarters of 1996 was misleading and how its statements in its July 2, 1994 disclosures that product returns were "higher than anticipated" and "unexpectedly increased" were false. In other words, plaintiffs' allegations regarding defendants' knowledge and expectations are not supported by particularized facts.

Moreover, these allegations do not give rise to a strong inference of scienter. Specifically, the Court finds that plaintiffs have failed to offer a plausible reason or motive for why the defendants would undertake such a scheme. Although the individual defendants' compensation was based on performance incentives, plaintiffs have not explained how a mere delay in the return of products would benefit them. In other words, while such a scheme could have inflated artificially Digi's financial results in the first two quarters of fiscal year 1996, it was inevitable that its third and forth quarter results would be harmed, negatively affecting the individual defendants' compensation.[9] Such circumstances do not give rise to a strong inference of scienter. *See, e.g., Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2nd Cir.1994) (stating allegations of motive are insufficient where the alleged

---

7. Contrary to plaintiffs' contentions, these later disclosures do not constitute admissions of fraud either. While defendants' reversal on the accounting issue may be viewed as recognition by defendants that they had made a mistake, it is not an admission that they consciously or recklessly mislead the public earlier in the year.

8. The Court notes that Wall left the company on September 30, 1996, prior to the bulk of these disclosures.

9. The Court further finds that plaintiffs' unparticularized "new sales program" allegations do not give rise to a strong inference that defendants disclosed "untrue facts with reckless disregard for their truth or falsity." *See Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1535 (8th Cir.1996) (quoting *Van Dyke v. Coburn Enterprises, Inc.,* 873 F.2d 1094, 1100 (8th Cir.1989)). Thus, these allegations fail even under a recklessness standard.

scheme would not be in the defendants' "informed economic self-interest").

This inevitability distinguishes the new sales program allegations from those relating to AetherWorks. Assuming as true plaintiffs' allegations regarding AetherWorks, it was not preordained that undisclosed facts regarding the AetherWorks investment ultimately would be disclosed and thereby would cause harm to Digi's earnings later in the fiscal year.[10] A delay in product returns, on the contrary, simply shifted the reporting of losses to later quarters.[11]

Furthermore, Deaner's sale of shares in May does not alter the analysis of the new sales program allegations. Plaintiffs allege all defendants were part of the scheme, and there is no allegation that Deaner's co-defendants took similar steps prior to July 1996 to reduce their holdings in Digi. These sales, without more, are insufficient to support a claim of fraud with regard to the new sales program. *See, e.g., Acito,* 47 F.3d at 54 (finding the fact that not all defendants sold their shares during the relevant class period undermined the plaintiff's claim that they had undertaken a scheme to defraud).

Likewise, plaintiffs' allegations regarding defendants' accounting treatment and reporting of software development expenditures, tax rates, and returned goods and inventory, are insufficient. The complaints lack particularity because they are unsupported by specific facts indicating that defendants were aware when they reported their first, second,

and third quarter results that their accounting and reporting practices regarding these matters were improper or likely improper. Defendants' recognition of previous errors alone does not give rise to a strong inference that they knowingly or even recklessly misled investors.[12]

These allegations, like those involving the new sales program, therefore are inadequate under both Rule 9(b) and the Reform Act. Thus, plaintiffs' securities fraud claims are dismissed except to the extent they involve, refer to, or arise from Digi's investment in AetherWorks.

### C. Individual Defendants

Defendants contend plaintiffs have failed to satisfy pleading requirements under Rule 9(b) and the Reform Act for claims brought against the individual defendants, because their allegations lack particularity with regard to the fraudulent acts each of these defendants committed. The defendants also contend plaintiffs have failed to state a claim for controlling person liability under Section 20(a). The Court finds that plaintiffs' allegations are sufficient with regard to Kamm and Wall (while he was employed by Digi), but insufficient with regard to Deaner.[13]

The Court notes that plaintiffs allege the following facts regarding Kamm and Wall: Kamm was the CEO and a director of Digi during the class period,[14] Wall was Digi's Chief Financial Officer and a vice president,[15] each received compensation based on

---

**10.** For example, had AetherWorks become profitable and ultimately benefitted Digi, defendants could have decided not to revisit their accounting treatment of Digi's investment or reveal facts regarding its early dealings with the company. Undisclosed facts and financial results from earlier in the year therefore could have remained hidden.

**11.** To the extent LSERS's "reserve for returns" allegations set forth an independent theory, the Court finds these allegations also are insufficient. These allegations totally lack particularity; for example, LSERS fails to link defendants' alleged fraud regarding returns to particular disclosures and describes the need for reserves in vague terms. Moreover, like those involving the "new sales program," nothing in these allegations gives rise to a strong inference of scienter.

**12.** These allegations of accounting errors are distinguishable from those relating to AetherWorks because they are far less detailed and are not

coupled with allegations of other material omissions or detailed allegations of violations of GAAP. Plaintiffs suggest that these accounting practices were part of a larger scheme—along with those practices relating to AetherWorks—to defraud investors. Although this indeed may be plaintiffs' theory, the Court still must determine whether these allegations in particular are sufficient under Rule 9(b) and the Reform Act.

**13.** Because the Court dismissed all portions of plaintiffs' fraud claims except to the extent they relate to AetherWorks, the analysis hereafter shall address only those allegations regarding AetherWorks.

**14.** Class plaintiffs also allege that Kamm was Digi's president.

**15.** Class plaintiffs also allege that Wall was Digi's treasurer.

Digi's performance, each participated in or was responsible for specified misleading statements, and Kamm participated in the execution of the AetherWorks transactions. These particularized allegations, combined with the other allegations discussed previously, are sufficient to satisfy the pleading requirements of Rule 9(b) and the Reform Act.

■ In addition, both the class plaintiffs' and LSERS's allegations regarding Kamm and Wall are adequate under the "group publication" doctrine. Because the individual defendants are inside and controlling persons of Digi and allegedly acted together with regard to the various disclosures, the complaints need not draw a specific connection between these defendants and every alleged omission and misrepresentation. *See, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2nd Cir.1987) (stating that where defendants are insiders and affiliates, plaintiffs need not draw a specific connection between each alleged misrepresentation and a particular defendant); *Levine v. Prudential Bache Properties, Inc.,* 855 F.Supp. 924, 930–31 (N.D.Ill.1994) (concluding plaintiff need not specify the exact participation of each defendant where defendants acted in concert to defraud); *Jackson v. First Federal Savings, F.A.,* 709 F.Supp. 863, 878 (E.D.Ark.1988) (holding a plaintiff need not, and indeed may not be able to, plead the exact role of each defendant in a group acting in concert). Defendants cite no authority indicating the Reform Act mandates a different conclusion.

■ Likewise, the Court finds plaintiffs have stated a claim against Kamm and Wall for controlling person liability under Section 20(a). In order to state a claim under Section 20(a), plaintiffs must plead (1) a primary violation by Digi and (2) the alleged control person exercised control over the general operations of Digi and had the power to determine the acts or omissions upon which the primary violation was predicated.

*See Farley v. Henson,* 11 F.3d 827, 835 (8th Cir.1993) (citing *Metge v. Baehler,* 762 F.2d 621, 631 (8th Cir.1985), *cert. denied,* 474 U.S. 1072, 106 S.Ct. 832, 88 L.Ed.2d 804 (1986)). As to the first element, the discussion set forth above demonstrates plaintiffs have plead adequately a primary violation of Section 10(b) by Digi. As to the second element, the Court finds the complaints clearly contain sufficient allegations of control and direction by Kamm and Wall over Digi's general operations and the various public disclosures regarding Digi's financial results.[16]

■ However, neither complaint alleges specific facts showing Wall's continued involvement in the alleged fraud after he severed his relationship with the Digi on September 30, 1996. Thus, the Court agrees with defendants that plaintiffs cannot state a claim against Wall for false or misleading disclosures published after he left the company.

■ The Court concludes that plaintiffs' allegations against Deaner are inadequate under Rule 9(b) and the Reform Act, and fail to state a claim under Section 20(a). Plaintiffs allege specifically that Deaner was a vice president of Digi and a general manager of the Local Area Network and remote access products, that his compensation was performance based, that he sold his Digi shares in May 1996, and that he was responsible for the new sales program and product returns.[17] These allegations fail, however, to identify how or whether Deaner had control over the general operations of Digi or knowledge of disclosures or transactions outside his area. In particular, the claims against Deaner lack specific allegations relating to AetherWorks. Plaintiffs' general allegations that all three individual defendants acted together in a scheme to defraud is insufficient. Unlike Kamm and Wall, who held positions of obvious control and authority over public disclo-

---

**16.** In their motion to dismiss the class plaintiffs' section 20(a) claims, defendants do not appear to contest the second element with regard to Kamm and Wall. In addition, although defendants argue that all of LSERS's section 20(a) claims should be dismissed, they note that the LSERS's complaint refers to Kamm and Wall as signitories of various public disclosures.

**17.** Because the new sales program portions of the fraud claims have been dismissed, particularized allegations regarding Deaner's connection with this program are insufficient to support any claim against him.

sures and the AetherWorks transactions, Deaner's area of authority and participation cannot be viewed as broad enough (without more) to include him in the group that controlled the general operations of Digi or its disclosures and accounting practices relating to AetherWorks. The Court therefore finds that the allegations relating to Deaner lack sufficient particularity, do not give rise to a strong inference of conscious misbehavior, and cannot support a claim for controlling person liability. *See, e.g., Farley*, 11 F.3d at 835 (stating an individual can be liable under Section 20(a) only if he exercises control over the primary violator's general operations and has the power to determine the specific acts or omissions underlying the violation).

### III. Curative Disclosure

■ Defendants contend that plaintiffs cannot state a claim based on Digi's accounting treatment after November 14, 1996, when Digi issued a press release announcing that it was analyzing whether to consolidate its results with AetherWorks or use the equity method. To terminate liability, defendants must make subsequent disclosures sufficiently clear to "cure" any misperceptions created by earlier misstatements or omissions. *See, e.g., Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir.1996) (stating that once the market becomes aware of concealed information it is no longer misled), *cert. denied*, —— U.S. ——, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997); *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J.1984) ("[L]iability under the securities acts is terminated when curative information is publicly announced or otherwise effectively disseminated.") (quoting *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982). The subsequent disclosures must be, at minimum, complete and accurate enough to counterbalance the misleading effect of those earlier statements. *See, e.g., Provenz*, 102 F.3d at 1492–93 (9th Cir.1996) (indicating that curative disclosure only occurs where the defendant proves that the information that was withheld or misrepresented was "transmitted to the public with

a degree and intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations") (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1376 (9th Cir.1994)); *Marksman*, 927 F.Supp. at 1306 (same).

■ The Court finds that Digi's November 14, 1996 press release did not set forth with sufficient completeness or clarity the "bad news" regarding AetherWorks to cure all of the misperceptions created by Digi's earlier disclosures. The release raised the specter of Digi's revisiting the accounting treatment of the AetherWorks investment and indicated that it was no longer reasonable for investors to rely on previous statements regarding Digi's financial results. However, the press release did not discuss the potential effect of the change in accounting treatment on the results of the first three quarters of 1996, it did not indicate the elimination of the interest accrued on the AetherWorks note under the equity method, and it understated the effect of AetherWorks' losses on Digi's earnings. Moreover, the substantial drop in Digi's stock value after the December 23, 1996 announcement supports the conclusion that misperceptions in the market regarding AetherWorks and Digi were not cured until that later disclosure.[18] Thus, the November 14 press release was not sufficiently accurate or complete to cure, as a matter of law, Digi's previous omissions and misleading financial statements regarding AetherWorks.

### IV. LSERS's Shares Sold Prior to November 14, 1996.

■ Defendants argue that LSERS cannot state a claim relating to AetherWorks for the 72,200 shares of stock it sold before November 14, 1996, because if there was any fraud, LSERS benefitted from it by selling these shares while their price was artificially inflated. LSERS does not respond directly to this argument. In fact, it appears to admit that its claim against defendants is

**18.** Other adjustments in Digi's financial results—such as applicable tax rate and the inclusion of software development expenses—likely also contributed to the decline in Digi's stock value after the December announcement. Because the fi-

nancial impact of the accounting treatment of AetherWorks investment was the most significant, however, the new disclosures regarding this investment clearly played a key role in the decline of the share value.

limited to seeking recovery for the 11,000 shares it sold after December 24, 1996.

In any event, the Court agrees with defendants that LSERS cannot state a claim for shares it sold before the November press release. Because LSERS sold these shares while the stock price was still inflated as a result of defendants' alleged fraud regarding the AetherWorks investment, LSERS could not have suffered any resulting damage with regard to these shares. *See, e.g., In re Seagate Tech. II Sec. Litig.*, 843 F.Supp. 1341, 1349–50 (N.D.Cal.1994) (stating that when a plaintiff benefits from the alleged inflation of defendant's share price because it sells its shares during the period of the alleged fraud, plaintiff has not been harmed); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 483 (W.D.Mich. 1994) ("[W]hile the [in-out] plaintiff suffers from the price inflation at the time of purchase, he or she benefits from the price inflation at the time of sale.").

## V. LSERS's Section 18(a) Claim

■ Section 18(a) provides as follows:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder, or any undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title, which statement was at the time and in light of the circumstances under which it was made false or misleading with respect to any material fact shall be liable to any person (not knowing that such statement was false or misleading), who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

15 U.S.C. § 78r(a). Thus, in order to state a claim for violation of Section 18(a), LSERS must plead that it purchased Digi stock in reliance on a document filed with the SEC pursuant to the 1934 Act, that contains a material misstatement or omission.

Defendants argue LSERS has failed to allege any false or misleading statement was made in a document "filed with the SEC"— as provided under Section 18—and has failed to allege actual reliance on specific false or misleading statements. The Court agrees.

LSERS Section 18(a) claim is premised on misstatements and omissions in Digi's first, second, and third quarter Form 10–Qs. Although Form 10–Qs are filed with the SEC, SEC regulations provide that the financial information contained within Part I of the Form 10–Qs "shall not be deemed to be 'filed' for the purpose of section 18 of the Act or otherwise subject to the liabilities of that section of the Act." 17 C.F.R. § 240.13a–13(d); *cf. Heit v. Weitzen*, 402 F.2d 909, 915 (2nd Cir.1968) (holding the effect of a similar regulation was to exempt from Section 18(a)'s coverage annual reports filed with the SEC or with a national securities exchange), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). LSERS's claim relies on the allegedly incorrect financial statements contained within Part I of the 10–Q. Because these statements are not "filed" with the SEC for the purpose of liability under Section 18(a), LSERS's claim under this section fails as a matter of law.

Moreover, LSERS fails to plead sufficiently "actual reliance" on the statements in these Form 10–Qs. LSERS alleges generally that it "directly or constructively relied" upon the financial information. Nowhere, however, does LSERS allege that it actually read or reviewed any of the Form 10–Qs or that it actually relied on one or more of these Form 10–Qs in deciding to make particular Digi stock purchases.

The Court follows the majority of courts which have held that mere "constructive reliance" is insufficient under Section 18(a). *See, e.g., Heit*, 402 F.2d at 916; *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F.Supp. 49, 56 (D.Mass.1995); *In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 798 (S.D.Cal.1990); *Gross v. Diversified Mortgage Investors*, 438 F.Supp. 190, 195 (S.D.N.Y.1977). LSERS therefore is required to allege specific facts showing that it purchased Digi shares in actual reliance on Digi's disclosures. *See, e.g., Lindner Dividend Fund*, 880 F.Supp. at 56 (D.Mass.1995) ("A plaintiff must specifically allege that he actually read a copy of the document filed

with the SEC, or relevant parts of the document reported in some other source, and was induced to act upon specific misrepresentations in the document."); *see also In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F.Supp. 1424, 1438 (D.Ariz.1992) (requiring actual "eyeball reliance"). Because LSERS has failed to allege any such facts, its Section 18(a) claim cannot be sustained.

The Court denies LSERS's request to allow it to amend its complaint a second time. Although Fed.R.Civ.P. 15 authorizes a court to permit amendments even after dismissal, such an amendment is within the court's discretion and need not be granted where it would be futile. *See, e.g., Niagara of Wisconsin Paper Co. v. Paper Indus. Union–Management Pension Fund*, 603 F.Supp. 1423, 1428 (D.Minn.1984), *aff'd*, 800 F.2d 742 (8th Cir.19986). LSERS has made no showing that an amendment would cure the deficiencies in its Section 18(a) claim. An amendment will not alter the fact that LSERS cannot rely on the alleged misstatements and omissions regarding AetherWorks in the financial statements contained in the Form 10–Qs. In addition, there is nothing in the record that persuades the Court that LSERS could plead sufficiently actual reliance, after it has not done so in its first two attempts. Thus, LSERS's Section 18(a) claim is dismissed and its request for leave to amend is denied.

### VI. LSERS's Common–Law Claims

 In addition to its federal claims, LSERS has pleaded common-law fraud and negligent misrepresentation claims. Under Minnesota law, these two claims require actual reliance. *See, e.g., Florenzano v. Olson*, 387 N.W.2d 168, 174 n. 3 & 4 (Minn.1986); *In re Employee Benefit Plans Sec. Litig.*, Civ. No. 4–92–41, 1992 U.S. Dist. LEXIS 21823, at *26–27 (D.Minn. July 27, 1992) (unpublished). Unlike a claim under Section 10(b), these misrepresentation claims cannot be premised on a presumption of reliance under the "fraud-on-the-market" theory. *See, e.g., In re SciMed Sec. Litig.*, Civ. No. 3–91–575,

1993 WL 616692, at *7 (D.Minn. September 29, 1993) (unpublished); *In re Employee Benefit Plans Sec. Litig.*, 1992 U.S. Dist. LEXIS, at *26–27. Thus, LSERS must plead and then prove that it actually relied on Digi's various disclosures.

The Court finds LSERS has failed to plead with sufficient particularity actual reliance on Digi's various disclosures. As with its Section 18(a) claim, LSERS's common-law fraud and misrepresentation claims are premised on the conclusory allegations that it "directly or constructively relied" on Digi's disclosures.[19] This allegation is insufficient under Rule 9(b) because LSERS has failed to allege that it actually read and relied on any specific misrepresentation in purchasing Digi's shares. LSERS has offered no argument for why its conclusory reliance allegations are sufficient in this circumstance. Thus, LSERS's common-law claims are dismissed.[20]

### VII. LSERS's Complaint and Rule 8

 Defendants contend LSERS's complaint should be dismissed for failing to comply with the requirements of Rule 8. Rule 8 provides, *inter alia*, that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that the complaint shall be "simple, concise, and direct." Defendants argue LSERS's complaint contravenes Rule 8 because it is verbose and confusing and contains multiple-choice allegations which make its claims "moving targets."

Based on the foregoing analysis, LSERS's only surviving claims are its Section 10(b) and Section 20(a) claims against Digi, Kamm, and Wall for misstatements and omissions relating to Digi's AetherWorks investment. The Court has reviewed the portions of the complaint relating to these claims in particular and finds they set forth the requisite elements and underlying allegations in a sufficiently clear and concise manner. Any organizational and stylistic deficiencies contained therein are neither so severe as to

---

**19.** In its memorandum, LSERS simply restates these conclusory allegations, asserting that it "obviously directly or constructively" relied on Digi's public statements.

**20.** For the reasons set forth in the previous section, the Court will not grant LSERS leave to amend its complaint.

impede the Court's ability to analyze LSERS's claims nor prejudicial to defendants. Thus, the Court rejects defendants' contention that LSERS's complaint should be dismissed under Rule 8.

## ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss class plaintiffs' claims [Docket No. 30] is **GRANTED IN PART and DENIED IN PART**.

2. Defendants motion to dismiss class LSERS's claims [Docket No.37] is **GRANTED IN PART and DENIED IN PART**.

3. Defendants' motions are **DENIED** as to the portion of class plaintiffs' and LSERS's Section 10(b) claims (Count I in both complaints) against Digi, Kamm, and Wall (during his tenure at Digi), premised on allegations of Digi's false or misleading statements and accounting practices relating to AetherWorks, excluding the portion of LSERS's claim involving the 72,200 shares of stock it sold before November 14, 1996.

4. Defendants' motions are **GRANTED** as to all remaining portions of class plaintiffs' and LSERS's Section 10(b) claims, and these portions are **DISMISSED**.

5. Defendants' motions are **DENIED** as to the portion of class plaintiffs' and LSERS's Section 20(a) claims (Count II in both complaints) against Kamm and Wall (during his tenure at Digi) which are premised on allegations of Digi's false or misleading statements and accounting practices relating to AetherWorks, excluding the portion of LSERS's claim involving the 72,200 shares of stock it sold before November 14, 1996.

6. Defendants' motions are **GRANTED** as to all remaining portions of class plaintiffs' and LSERS's Section 20(a) claims, and these portions are **DISMISSED**.

7. Defendants' motion is **GRANTED** as to LSERS's Section 18(a) claim (Count III), and this claim is **DISMISSED**.

8. Defendants' motion is **GRANTED** as to LSERS's common-law fraud and negligent misrepresentation claims (Court IV), and these claims are **DISMISSED**.

9. LSERS's request for leave to amend its complaint is **DENIED**.